UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

(1) **CURTIS ZAMERSKI** and (2) **RICHARD KOHL,**

       Plaintiffs,

  v.

(3) **TERRENCE L. BODEWES**, (4) **JAMES MALONEY**,
(5) **VINCENT FETES**, (6) **THOMAS HERR**, (7) **DARYL
BODEWES,** (8) **GEORGE FERRARO** and (9) **JAMES
BIDDLE, SR**., personally and in their capacities as Trustees
and plan fiduciaries,

      Defendants.

**Civil Action No.:
00-CV-365C(M)**

(3) **TERRENCE L. BODEWES**, (4) **JAMES MALONEY**,
(5) **VINCENT FETES**, 7) **DARYL BODEWES,**
(9) **JAMES BIDDLE, SR**., (8) **GEORGE FERRARO** and
(6) **THOMAS HERR**,

      Third-Party Plaintiffs,

  v.

(10) **ULICO CASUALTY COMPANY**,

      Third-Party Defendant.

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS/THIRD PARTY PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

HISCOCK & BARCLAY, LLP

## PRELIMINARY STATEMENT

Ulico moved for summary judgment under the "insured vs. insured" exclusion of the Trustee and Fiduciary Liability insurance policy at issue in this coverage action, which precludes coverage for claims brought "by or on behalf of an Insured or Insureds . . . against another Insured or Insureds."  Ulico so moved because the underlying lawsuit presents exactly what the exclusion is designed to prevent:  the moral hazard of one insured suing another, or instigating a lawsuit against other insureds in order to trigger insurance payments.  The exclusion applies because the lawsuit was brought and instigated by the Chairman of the Fund's Board of Trustees, who is an insured under the policy.  Second, Ulico alternatively sought summary judgment under the "insufficient contributions" exclusion because, as the Court has already found, the crux of plaintiffs' allegations in the underlying suit against the Fund's trustees (plaintiffs herein, "Trustees") is that they breached their fiduciary duty by collecting insufficient contributions. Therefore, even if the lawsuit had not been instigated by an insured, coverage is still precluded because plaintiffs in the underlying suit seek to restore insufficient funds to the plan.

The Trustees do not dispute that the underlying lawsuit is brought "by or on behalf of" the Fund, and that the insured vs. insured exclusion applies on its face.  Instead, they first argue that their "only remedy by law" is a breach of fiduciary duty claim asserted "on behalf of or for the benefit of a plan," and that therefore, coverage under Ulico's policy is illusory if it precludes all possible breach of fiduciary duty claims.  But the Trustees fundamentally misstate the broad scope and purpose of ERISA, which is to protect the rights of participants under benefit plans.  ERISA allows breach of fiduciary duty claims on behalf of participants themselves, and are not limited to the type of derivative claim brought on behalf of the fund that is precluded by Ulico's insured v. insured exclusion.  Although the exclusion applies in this case, the policy provides valuable fiduciary liability coverage for a host of other ERISA-based fiduciary liability claims.

HISCOCK & BARCLAY, LLP

Moreover, in what appears to be a fallback position, the Trustees seek to have the Court order Ulico to defend the underlying case.  Their argument, however, overlooks the simple fact that the Policy in this case — like most D&O policies — is an indemnification policy, not a duty to defend policy.  The Trustees' objective, to have this Court apply in this case principles applicable only to duty to defend policies, is without precedent.

Finally, the Trustees affirmatively ask the Court to rule as a matter of law that the underlying suit *is* covered, which, by definition, requires not only that the Court reject the plain language of the policy exclusions that are the subject of Ulico's motion, but also that it find that there are no genuine issues of material fact with respect to the application of every one of the other various exclusions and affirmative defenses that could alternatively preclude coverage.  In addition to the plain language of the policy precluding such a result as a matter of law, the Trustees have not come close to meeting their burden in their cross-motion of proffering undisputed material facts that would preclude application of every one of the defenses and exclusions that Ulico has asserted are applicable.  Indeed, they do not even proffer a proper Rule 56.1 Statement demonstrating the facts as to which there is no genuine issue on their cross-motion.[1]  That is, no doubt, because the undisputed material facts related to the application of all of Ulico's affirmative defenses favor Ulico as a matter of law.

In this brief, because the Trustees' "duty to defend" arguments are woven throughout all of the substantive coverage arguments, Ulico will first address that issue.  Second, it will address the Trustees' "illusory" coverage argument, which is their principal argument against application of the "insured vs. insured" and "insufficient contributions" exclusions.  Ulico will demonstrate that the Policy's coverage provides valuable fiduciary liability coverage, and that the Trustees misread ERISA's restrictions on the

---

[1] Defendants essentially only respond to Ulico's Statement by admitting the facts are undisputed, but arguing that there is nevertheless a broad duty to defend.  Because Defendants do not proffer any new

HISCOCK & BARCLAY, LLP

other types of claims that may be (and are frequently) brought against Plan trustees.  Third, Ulico will address the specific material fact issues that would preclude summary judgment for the Trustees, even if the Policy did not include the exclusions on which Ulico relies in its motion.

## POINT I

### THE ULICO POLICY IS NOT A "DUTY TO DEFEND" POLICY

Perhaps appreciating that ultimately their claims will likely not be covered, Trustees premise most, if not all, of their claims for coverage under the mistaken assertion that Ulico has a "duty to defend" if a claim is "possibly" or "arguably" covered.[2]  But the Ulico Policy is not a duty to defend policy – it is an indemnity policy that agrees to reimburse defense costs if a claim is otherwise covered under the Policy.

As a threshold matter, Trustees appear to assume that all insurers automatically take on a duty to defend if there is a covered claim.  But that is wrong.  Insurance policies can provide a duty to reimburse, to indemnify, to defend, or a combination of these duties.  Frequently, policies covering property damage or liability for personal injuries impose such a duty on the insurer.  But as one leading commentator

(..continued)

undisputed facts in support of their cross-motion, Ulico does not submit an opposing Rule 56.1 Statement with this brief.

[2] *E.g., Memorandum in Support of Defendants' Opposition* ("Tr. Mem.") at 8 ("the duty to defend is broad"); *Id.* at 9 (citing the "well-established rule in New York that insurance policies are to be broadly construed to require an insurance company to defend an insured"); *Id.* at 10 ("there is a duty to defend whenever any claims arise from covered events"); *Id.* at 11 ("the duty to defend arises based on the four corners of plaintiffs' pleadings"); *Id.* at 12 ( "…Ulico has a duty to defend against the claims asserted by Plaintiffs"); *Id.* at 13 ("it is clear that Ulico has a broader duty to defend the entire action"); *Id.* at 14 and 17 ("if any of the claims against [an] insured arguably arise from covered events, the insurer is required to defend the entire action," *citing Town of Massena v. Healthcare Underwriters Mutual Ins. Co.*, 749 N.Y.S.2d 456, 459 (N.Y. 2002); *Id.* at 18 ("…Ulico, at a minimum, has a duty to defend the Defendant Trustees with regard to all of the allegations asserted in Plaintiffs' Second Amended Complaint,"); *Id.* at 22 n.13 ( "…Ulico still would have a duty to defend Defendants with regard to all of the claims actually asserted in the Complaint."); *Id.* at 26 ( "Ulico still has a duty to defend."). The duty to defend is even the focus of Defendants' Local Rule 56.1 Statement, which, rather than identifying contested facts, responds to virtually every paragraph of Ulico's Statement with the legal argument that coverage fact issues are irrelevant because, they argue, coverage is not determinative of the duty to defend.  *Defendants'/Third Party Plaintiffs' Statement Pursuant to Local Rule of Civil Procedure 56.1*, Para. 3 ("An insurer's duty to defend is broader than its duty to indemnify and is generally determined by comparing the allegations of

HISCOCK & BARCLAY, LLP

explained, professional liability insurance policies, which include directors and officers and Ulico's fiduciary liability policy at issue here, typically do not:

> …Another important feature of the D&O policy is its requirement that the insurer pay defense costs, but it does not impose upon the insurer the duty to defend its insureds.  [fn omitted]  Typically, the policy language permits the insureds to select defense counsel, subject to the consent of the insurer.
>
> D&O policies historically have not been written on a "duty to defend" basis due to the fact that the policies were intended to cover the very "brain trust" of the corporation and these individuals did not wish to have such delicate matters as their personal defense left to the control of an insurance company.

Monteleone & Conca, *Directors and Officers Indemnification and Liability Insurance:  An Overview of Legal and  Practical Issues*,  51 The Business Lawyer 573, 593 (May 1996).  Thus, many insurance policies contain a duty to defend, which does require the insurer to assume the defense in the underlying litigation if any arguably covered claim is asserted.  But other policies, like the one at issue here, provide only that the insurer reimburse the costs of defense if the policyholder becomes legally obligated to pay damages for a claim made.  New York courts recognize this distinction, and hold that the duty to defend arises only when the policy at issue expressly provides for such a defense obligation.  *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc.,* 556 N.Y.S.2d 549, 551 (N.Y. 1990).

The Ulico Policy does not contain any "duty to defend" language.  To the contrary, it provides that Ulico's only obligation is to indemnify the insured for covered "Loss."  Specifically, it describes Ulico's responsibility in the insuring agreement as follows:

> [t]o pay on behalf of the Insureds any Loss…as the Insureds…shall become legally obligated to pay as damages for claim or claims which are first made against the Insureds…by reason of any Wrongful Act….

Policy at 1.  The Policy further defines "Loss" in Endorsement 1 as "the amount an Insured is legally liable to pay in satisfaction of claims insured hereunder, and shall include … damages, judgments or

(..continued)
the complaints to the terms of the relevant policies," *citing Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002).

settlements." *Id.* at Endorsement No. 1.  Nowhere does the Policy refer to any duty on Ulico's part to defend the insureds.  Nowhere do the Trustees identify any language creating such a duty.

Nor will the Policy be converted into a "duty to defend" policy by implication of New York State law.  In *National Union*, the court considered language similar the language in the Policy at issue here, which defined "loss" payable as:

> any amount which the Insureds are legally obligated to pay for a claim…made against them for Wrongful Acts, and shall include damages, judgments, settlements, costs, charges and expenses…incurred in the defense of actions….

556 N.Y.S.2d at 551.  The *National Union* court found that the policy there, "as is the case with most directors and officers liability policies, does not impose an obligation to provide a defense, but only to reimburse expenses incurred in the defense."  *Id.*

Similarly, in *In re Ambassador Group, Inc. Litigation*, 738 F. Supp. 57, 61-62 (E.D.N.Y. 1990), the court restated the general rule that, "[a]s a general matter…New York law recognizes that whether or not an insurer has a duty to defend is to be determined from the language of the policy; in the absence of a policy provision expressly imposing a duty to defend, New York courts will not find such a duty."  *See also Henderson v. Aetna Cas. & Sur. Co.*, 449 N.Y.S.2d 178 (N.Y. 1982) (trial court should have dismissed claim because insurer had no duty to defend under policy that did not contain language imposing such a duty); *Lowy v. Travelers Property & Cas. Co.*, 2000 WL 526702 (S.D.N.Y. 2000) (granting summary judgment to insurer when policy contained no provision imposing a duty to defend); and *In re Kenai Corp.*, 136 B.R. 59, 63 (S.D.N.Y. 1992) (affirming lower bankruptcy court's findings that insurer had no duty to defend where language assigning that duty could not be found in the insurance policy, and holding the duty to defend cannot be implied by law).

By way of contrast, the court in *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304 (N.Y. 1984), did impose a duty to defend on the insurer under a liability policy.  The policy there, however, specifically

HISCOCK & BARCLAY, LLP

HISCOCK & BARCLAY, LLP

required the insurer "to defend, in the name and on behalf of the Insured, any suit seeking damages for any of the above causes, even if such suit is groundless, false or fraudulent." *Id.* At 309.  Obviously, the Policy here contains no such language.  The Trustees' discussion of cases in which the policies at issue provided for a duty to defend are irrelevant to this case.[3]  Imposition of a duty to defend on Ulico in this case would be unprecedented.

## POINT II

### ULICO IS ENTITLED TO SUMMARY JUDGMENT UNDER THE INSURED V. INSURED AND INSUFFICIENT CONTRIBUTIONS EXCLUSIONS.

### A.  This is Precisely the Type of Case for Which the "Insured vs. Insured" Exclusion Bars Coverage

Ulico demonstrated in its motion that the "insured vs. insured" Policy exclusion on its face unambiguously bars coverage for Plaintiffs' claims.  Policy Endorsement No. 2 excludes coverage for "any claim or allegation which, directly or indirectly; in whole or in part, arises out of any assertions, allegations, causes of action or demands whatsoever by or on behalf of an Insured or Insureds under this Certificate against another Insured or Insureds hereunder."  Coverage for the underlying lawsuit is barred because it was brought on behalf of an insured (the Chairman of the Fund and the Fund itself) against other insureds (Trustees).  Additionally, all claims brought would inure to the benefit of (and therefore

---

[3] In the cases the Trustees cite, courts found a duty to defend because the policies themselves reflected the insurer's agreement to undertake that duty.  *E.g.*, *Fitzpatrick v. American Honda Motor Co., Inc*, 78 N.Y.2d 61, 69 (N.Y. 1991) (discussing the liability policy at issue and stating that "insurer promised to 'defend any suit against the insured seeking damages on account of…bodily injury or property damage….'"); *Meyers & Sons Corp. v. Zurich Am. Ins. Group*, 546 N.Y.S.2d 818, 819 (1989) (discussing insurer's promise under the policy to "defend any suit against [insured]", and quoting the relevant policy clause which stated that "the Company shall have the right and duty to defend any suit against the insured seeking damages…."); *Ruder & Finn Inc. v. Seaboard Surety Co.*, 439 N.Y.S.2d 858, 860 (discussing insurance policy clause in which insurer agreed "[t]o defend, in the name and on behalf of the Insured, any suit seeking damages for any of the above causes, even if such suit is groundless, false or fraudulent."); *Continental Cas. Co. v. Rapid-American Corp.*, 593 N.Y.S.2d 966, 968 (stating that the insurance policies at issue there "impose upon [the insurer] the duty to defend any suit against the insured seeking damages payable under the policies 'even if any of the allegations of the suit are groundless, false or fraudulent.").

were brought "on behalf of") the Fund itself, which is also an insured.  Because there are no material facts in dispute regarding the applicability of this exclusion and the Trustees have offered no credible argument to the contrary — indeed, they have not even contested Ulico's Rule 56.1 Statement of Undisputed Material Facts[4] — the Court should grant summary judgment for Ulico on this basis alone.  *Celotex Corp v. Catrett*, 477 U.S. 317, 321, 324 (1986).

The Trustees argue that Ulico's "tortured interpretation" of this exclusion should be disregarded because insurance policies are construed strictly against insurers under New York law.  *Tr. Mem.* at 7.  Again, they attempt to apply general insurance principles applicable in some cases to one in which the principles do not apply.  While it sometimes true that in cases of ambiguous provisions, insurance policies may be construed strictly, that is only so when the Court must look beyond the plain meaning of the words in the policy.  That principle does not apply to the applicability of the insured vs. insured exclusion.

In *Levy v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 889 F.2d 433 (2d Cir. 1989), the Second Circuit affirmed the district court's application of an insured vs. insured exclusion to bar coverage for a claim brought on behalf of a company against former company directors.  The court rejected the argument that the clause should be interpreted in favor of coverage, holding that, where there was no ambiguity, "canons of construction favoring the insured are irrelevant." *Id.* at 434.[5]

---

[4] The Trustees' Rule 56.1 Statement in Response does not state that it contests the undisputed facts that Ulico outlined in its Rule 56.1 Statement.  Rather, it merely argues that the facts Ulico presented, including the Policy language, "speak for themselves" and are irrelevant to the issues before the Court because "the duty to defend must be measured by the allegations contained in Plaintiffs' Second Amended Complaint, not by extrinsic evidence."  *Defendants'/Third-Party Plaintiffs' Statement Pursuant to Local Rule 56.1* at ¶¶ 3, 4, 5, 6, 7, and 8.

[5] *See also In re Ambassador Group, Inc. Litigation*, 738 F. Supp. 57, 62 (E.D.N.Y. 1990) ("Under New York law, if the words of a contract of insurance are clear and unambiguous, they must be accorded their plain and ordinary meaning and the policy enforced as written….") (internal citations omitted); *Sanabria v. American Home Assur. Co.*, 508 N.Y.S.2d 416, 416 (N.Y. 1986) (deciding whether an underlying claim was covered by an insurance contract solely by interpreting the contract's terms and noting that "unambiguous provisions must be given their plain and ordinary meaning.")

HISCOCK & BARCLAY, LLP

This Court need not go beyond the unambiguous language of the exclusion at issue because its meaning is plain and clear; the coverage determination may therefore be decided as a matter of law.[6]  And the meaning of the exclusion must be determined according to the principles of common speech and the reasonable expectation and purpose of the ordinary businesspeople.[7]

### 1. The Exclusion Applies Because the Claims were Brought on Behalf of the Fund, Which Was an Insured

The Trustees do not contest that the damages sought in the underlying litigation would inure to the benefit of the Fund and were brought on behalf of the Fund.  Nor do they contest that the Fund is an insured under the Policy.  Nevertheless, they seem to argue that the exclusion's bar on coverage for claims brought "by or on behalf of an Insured" cannot possibly include claims that inure to the benefit of the Fund.  "On behalf of" is not an ambiguous phrase.  The definition of this term is "as a representative or a proxy for" or "in the interest or aid of."  Random House Webster's Unabridged Dictionary 188 (2d ed. 1998).

Accordingly, it is undisputed that coverage is barred because the claims in the underlying case were brought "by or on behalf" of an insured against another insured.  These claims have been brought "on behalf" of an insured, the Fund, by virtue of the fact that any benefits Plaintiffs are awarded inure to the Fund.  Significantly, as Trustees concede, the Supreme Court in *Massachusetts Mut. Life Ins. Co. v Russell*, 473 U.S. 134 (1985), has held that an award won for a claim brought pursuant to Section 409 of ERISA inures solely to the plan itself and not to the participants.  And, as Trustees concede, their claims were brought pursuant to Section 409.

---

[6] *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 352, 355 (N.Y. 1978) (interpreting the terms of an insurance contract as a matter of law, and reinstating the lower court's grant of summary judgment on that basis).

[7] *Bird v. St. Paul Fire & Marine Ins. Co.*, 224 N.Y. 47 (N.Y. 1918) (using these two standards to interpret terms in an insurance policy exclusion and granting summary judgment to insurer on the issue of coverage).

HISCOCK & BARCLAY, LLP

In the face of this straightforward exclusion, Trustees now argue that the plain-language interpretation of this exclusion must be ignored because it would render the insurance contract illusory. They claim that the exclusion would bar coverage for *any* possible claim for breach of fiduciary duty that a Plaintiff could bring under ERISA, arguing that all ERISA fiduciary claims must be brought on behalf of the Plan.   The Trustees are wrong; they misread the broad scope ERISA.   Whereas it is true that fiduciary claims brought under ERISA § 409 must be asserted on behalf of the Plan (*Massachusetts Mut. Life Ins. Co.*, 473 U.S. 134 (1985)), the Trustees take an unwarranted leap in their analysis by therefore concluding that *all* claims brought under ERISA against an insured must be brought on behalf the Plan (*Tr. Mem.* at 5-6).

The Supreme Court has held otherwise, and has identified other provisions of ERISA that permit fiduciary claims that inure to the beneficiary rather than the Plan.  In *Varity Corp v. Howe*, 516 U.S. 489 (1996), for example, the Court held that ERISA "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims...that runs directly to the injured beneficiary." *Id.* at 512, citing ERISA Section 502(a)(1)(B).  In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989), the Court discussed the "panoply of remedial devices" available for participants and beneficiaries under ERISA, and specifically the fact that Section 502(a)(1)(B) allows suits for the recovery of benefits due, to enforce rights under a plan, and to obtain a declaratory judgment of future benefits under a plan. *Id.*  at 108 (internal citations omitted).  *Firestone* involved a breach of fiduciary duty claim against a corporate employer stemming from its decision not to pay severance benefits pursuant to a termination pay plan. *Id.* at 106-07.

In short, while the specific provision of ERISA (section 409) under which the underlying claims were brought may well require that all §409 claims be made on behalf of the Plan rather than individual plan participants, that does not mean that there are no other fiduciary claims that could have been brought

HISCOCK & BARCLAY, LLP

against the Fund or its trustees.  Trustees' argument that the exclusion renders the Policy illusory misses the mark.  There are a host of fiduciary claims that could have been brought under appropriate circumstances, which would have been covered.[8]  Those claims, however, were not brought.

### 2.  The Exclusion Bars Coverage Because Mr. Burke was a Named Plaintiff

The fundamental purpose of an "insured vs. insured" exclusion is implicit:  it precludes a covered fund or corporation's insured trustees from themselves instigating or instituting a covered claim.  As the court noted in *In re County Seat Stores, Inc.*, 280 B.R. 319, 323 (S.D.N.Y. 2002), "insured vs. insured" exclusions are intended to prevent insured parties from colluding to bring a suit that will trigger insurance coverage for a loss.  For similar reasons, homeowners cannot intentionally destroy their own insured property in the hopes of having the insurer replace it.  Yet that is effectively what happened in this case.

Mr. Burke, the current Chairman of the Fund (since 1999), and more importantly, an "insured," as defined in the Policy, was a named plaintiff in the original complaint.  Policy at Section II(d).  Not only was he a named plaintiff, Mr. Burke was also a driving force behind the prosecution of the claims in the underlying case.  For example, Mr. Burke was the individual who wrote to Segal in early 1999 demanding explanations for the Fund's current condition; he was the one who sought advice from the Levy, Ratner law firm regarding possible claims against the Trustees; and he was apparently the one whose assertions

---

[8] For example, had a claim been brought by Fund participants (or the Department of Labor) for breach of fiduciary duty pursuant to the Employee Retirement Income Security Act ("ERISA") Section 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), it would have been covered if the participant alleged that the Trustees acted imprudently regarding the investment of fund assets; that is, that the Trustees invested assets without adequate investigation.  A second example of claims that would be covered by this Policy would be those brought by Fund participants (or the Department of Labor) for breach of fiduciary duty pursuant to ERISA Section 404(a)(1)(C), 29 U.S.C. §1104(a)(1)(C).  In such claims, a participant alleges that the Trustees invested assets without diversifying those investments, for example, by investing all of the Fund's assets into high-risk real estate ventures.  Similarly, the Policy allows participant suits alleging that the trutee's breach of fiduciary duty has rendered the Fund unable to pay the participant's benefit.  To the extent that the Trustees rely on another exclusion in arguing that participant benefit suits are also excluded under the Policy, they failed to read the carve out to that exclusion for cases where the breach caused the Fund to be unable to pay, as opposed to claims that are effectively "breach of

HISCOCK & BARCLAY, LLP

motivated the lawsuit in the first instance.[9]   Indeed, as this Court has already stated, "[a]ccording to plaintiffs [in the underlying action], it was not until Thomas W. Burke became Chairman of the Fund's Board of Trustees in 1999 that the lack of prudent oversight on the part of the former trustees was discovered, …."[10]

The Trustees apparently belatedly ascertained that the exclusion applied, and attempted to avoid its application by having Mr. Burke later withdraw from the case as a plaintiff.  They now argue that his withdrawal retroactively takes the claim out of the policy exclusion.  *Tr. Mem.* at 10.  But this contention is without merit.  Coverage may not be created by *post hoc* manipulation of the claim.  For this reason, the courts to have considered such an issue have held that the application of the "insured vs. insured" exclusion is determined as of the time that the claim is made.  As the Third Circuit Court of Appeals reasoned in *Township of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 118 (3rd Cir. 1997), the original claim should govern this issue where the policy at issue is a "claims made" policy — as is the case here — in which the insurer is liable for claims made during the policy period.[11]

HISCOCK & BARCLAY, LLP

(..continued)
  contract" claims where the Fund and the participant disagree about what the participant is entitled to be paid.  *See* Policy at Section IV(A).
[9] *See, e.g., April 13, 1999 Letter from The Segal Company to Burke* (Tab 8 to Ulico's Appendix to Rule 56.1 Statement) (responding to Mr. Burke's request that Segal provide him with copies of all previous correspondence between Segal and former trustees advising them of funding deficiencies and other financial difficulties facing the Fund); *May 4, 1999 Letter from Plaintiffs' current counsel, Levy Ratner, to Mr. Burke* (Tab 23 to Ulico's Appendix to Rule 56.1 Statement) (advising Burke that the firm is reviewing documents in order to determine, among other things, (1) whether the actuaries and trustees used appropriate assumption for funding purposes, (2) how the Trustees and actuaries were able to propose benefit improvements while the Fund was using the next year's contributions to meet minimum funding requirements, (3) whether the Trustees failed to act prudently regarding investments, and (4) whether the Trustees fulfilled their fiduciary duties in dealing with rates of return of the Fund's investments.)
[10] Decision and Order at 7 (Curtin, J. Feb. 28, 2003).
[11] *Id.* at 118.  *See also American Medical Intern., Inc. v. National Union Fire Ins. Co.*, 244 F.3d 715, 721 (9th Cir. 2001) (analyzing applicability of "insured vs. insured" exclusion as of the time of filing initial claim); *CIGNA Ins. Co. v. Gulf USA Corp.*, 1997 WL 1878757 (D. Idaho 1997) (*citing Township of Center* with approval).

The Trustees now attempt to explain away Mr. Burke's initial involvement by asserting that he was only included as a plaintiff so that the plaintiffs could assert a claim against the Segal Company, the Fund's actuary and consultant.  They contend that Mr. Burke was the only party in privity with the Segal Company, and that he withdrew as plaintiff once the Segal Company was eliminated as a party to the underlying suit by virtue of a settlement agreement.  *Tr. Mem.* at 2, n.1.  But even assuming that Mr. Burke personally, rather than the Fund, contracted with the Fund advisor (which would be surprising to say the least), Trustees' argument is factually flawed.  It might have more superficial appeal if in fact Mr. Burke had only sued the Segal Company and the claims against the trustees were only brought on behalf of the individual plaintiffs.  But that was not the case.  Mr. Burke brought claims against not only Segal, but also against Trustees T. Bodewes, Maloney, Fetes, Bouchard, Herr, D. Bodewes, Ferraro and Biddle.  *See* Decision and Order, at 2, n. 1 (Curtin, J. Feb. 28, 2003).  Trustees' post-hoc explanation for Mr. Burke's participation as a plaintiff as well as his subsequent withdrawal do not ring true.

Nevertheless, Trustees' explanation for Mr. Burke's exclusion and withdrawal is in this instance irrelevant.  The critical fact is that Mr. Burke was a plaintiff when the claim was made.  The tactical reasons that plaintiffs' counsel included Mr. Burke as a named party do not matter; what does matter is that one insured instigated and brought claims against other insureds, thereby excluding those claims. The Policy broadly excludes all claims "which, directly or indirectly; in whole or in part, arise[] out of" any such claims. All of the remaining claims, *at a minimum,* arise directly or indirectly, in part, out of Mr. Burke's assertions or claims.[12]

---

[12] To the extent that Trustees seek to argue that the claims by the remaining individual participants are completely unrelated to Mr. Burke's claims, and therefore do not arise even indirectly out of those previous claims, they would not be covered in any event because this is a claims made policy, and does not cover claims first made at the time of the amendment that eliminated Mr. Burke as a plaintiff.

HISCOCK & BARCLAY, LLP

**B.  The "Insufficient Contributions" Exclusion Also Bars Coverage**

Ulico demonstrated in its motion that, alternatively, this Court should grant summary judgment denying coverage because the "insufficient contributions" exclusion bars applies to this case.   The Trustees have not put forth any plausible argument challenging the applicability of that exclusion, which applies "to any claim or allegation which directly or indirectly arises out of the bankruptcy, insolvency or inability of the Trust Fund to pay benefits due to insufficient contributions."   Policy at Endorsement No. 4.  Obviously, the Policy was not intended to effectively insure the Fund's financial viability when the sums being paid out are more than the sums being contributed.

This Court has already observed that the essence of the underlying complaint is that the Trustees failed to collect sufficient contributions to insure the financial viability of the Fund.   Specifically, the Court described the declining active membership in the Fund due in large measure to changing demographics, which resulted in contributions being insufficient to meet even its "minimum funding requirements" without "borrowing" against future contributions.   Decision and Order at 3.  It went on to describe the gist of the claims in the underlying case as alleging that,

> …despite the *continuous funding deficiencies* and other warning signs indicating that the Fund was in serious financial trouble, the trustees regularly approved increases of pension benefits for retired employees and took other actions in breach of their fiduciary duties with respect to the Fund.  *More specifically*, plaintiffs allege that between 1983 and 1998 the *trustees improved benefits payable* pursuant to the plan on an almost annual basis, *without* fully evaluating whether or not the Fund could afford the improvements or *recommending commensurate increases in the rates of employer contributions*… .

Decision and Order at 3 (emphasis added).

The Trustees focus on the fact that the Complaint, as amended, contains allegations that do not specifically refer to insufficient contributions.[13]  The crux of the underlying complaint remains the same,

---

[13] The Complaint was amended in an apparent effort to make it superficially appear less likely to fall within one of the exclusions from coverage.  The amendments, in addition to removing Mr. Burke as a

HISCOCK & BARCLAY, LLP

as the Court described it.  Each and every one of the claims either directly or indirectly arises out of the inability of the Fund to pay benefits due to insufficient contributions.

Therefore, even though there are indeed in the Second Amended Complaint a number of claims that do not now on their face refer to insufficient contributions, the exclusion still applies for two reasons.  First, it is exceptionally broad, covering not only claims that allege insufficient contributions, but also any claim that "directly or indirectly arises out of" the inability of the Fund to pay benefits due to insufficient contributions.  Second, the determination of whether a claim arises out of insufficient contributions turns on whether insufficient contributions caused the injury sustained by the Plaintiffs, not the way they phrased the claims in their complaint.  *Jasco Tools, Inc. v. American Mfrs. Mut. Ins. Co.*, 688 N.Y.S.2d 317, 318 (N.Y. App. Div. 1999).  In *Jasco*, the court applied a policy exclusion barring coverage for claims based on the failure of an investment to perform despite plaintiffs' allegations of negligence in plan administration.  The court held that the exclusion applied because the "injury sustained…is based upon the failure of an investment…."  *Id.*   Similarly, here, regardless of how Plaintiffs titled their claims in the underlying case, this Court should evaluate the application of the exclusion based on the injury Plaintiffs sustained, which the Court already found to be based on the Fund's having given out more money that it was taking in.

As to the breadth of the exclusion, the Trustees' brief does not refute the conclusion that this Court must read the term "arising out of" as a "but for" proposition to be applied broadly in determining coverage.  *Mt. Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 668 N.E.2d 404 (N.Y. 1996); *see also, U.S. Underwriters Inc. Co. v. Zeugma Corp.*, No. 97-Civ. 8031, 1998 U.S. Dist. LEXIS 14448 at *8 (S.D.N.Y. Sept. 15, 1998) (broadly interpreting the term "arising out of," and stating that it is "ordinarily understood

(..continued)

plaintiff, removed many of the specific references to insufficient contributions that were contained in the original complaint.  The focus of the complaint remains the same, however, and still seeks recovery

to mean originating from, incident to, or having connection with….")(internal citations omitted).  Nor can the Trustees refute that the claims could not have been brought but for the failure of the trustees to collect sufficient contributions.

Simply put, Plaintiffs' claims would not exist but for the fact that the Fund is losing money because it has been paying out more money in benefits than it is taking in via contributions.  *Id.*; *Opening Memo* at 14-15 (citing documentary evidence detailing the Fund's inability to pay benefits due to lack of contributions).  These facts remain uncontroverted by the Trustees.  As a result, this Court should grant Ulico's motion on this independent basis.

### POINT III

### EVEN IF THE COURT RULED THAT THE "INSURED VS. INSURED" AND INSUFFICIENT CONTRIBUTIONS EXCLUSIONS DID NOT APPLY AS A MATTER OF LAW, THE TRUSTEES HAVE NOT ESTABLISHED THAT THERE ARE NO MATERIAL FACT ISSUES REGARDING ULICO'S NUMEROUS OTHER AFFIRMATIVE DEFENSES

Ulico has established its entitlement to summary judgment on undisputed facts based on the two exclusions discussed above.  Of course, application of only one exclusion based on undisputed facts ends this case and obviates the need for the Court to decide the applicability of any other exclusions or defenses.  Because the Trustees have not challenged the facts underlying Ulico's motion and have misconstrued the relevant law, response to their affirmative cross-motion should be unnecessary.  Nevertheless, in addition to asking the Court to effectively read two critical exclusions right out of the Policy and declare them inapplicable in this case as a matter of law, the Trustees also ask the Court to declare as a matter of law that none of Ulico's affirmative defenses has merit.  Those defenses are principally based on other additional exclusions that would likely bar coverage, but which were unnecessary to Ulico's motion due to the strength of the other exclusions.

(..continued)
because the fund is now insolvent, whereas it would not have been had sufficient contributions been collected.

- 16 -

Therefore, in order to prevail on their own motion for summary judgment, Trustees would have to overcome three significant obstacles.  They first must demonstrate that Ulico's interpretation of the exclusions, as discussed above and in its Opening Memorandum, is wrong as a matter of law (which would of course also involve distinguishing all the precedent supporting application of the exclusions).  They then would have to show that there are no disputed issues of material fact regarding *their* interpretation of the exclusions discussed above.  Fed. R. Civ. P. 56(c).  Finally, Trustees would have to prove that there are no disputed issues of material fact regarding the applicability of other affirmative defenses/exclusions that would otherwise bar coverage but were not relied on in Ulico's motion.  They have not done so.  As such, their arguments on Ulico's affirmative defenses should be effectively moot.

### A.  Material Facts Remain Regarding Ulico's Seventh Affirmative Defense Based on the Requirement that Defendants Give Timely and Sufficient Notice of Claim

The Trustees argue that they gave timely notice of the occurrence precipitating the underlying lawsuit such that Ulico's affirmative defense should be denied.  The insurance contract here required Trustees to give Ulico notice of such an occurrence "as soon as practicable."  Policy at  4.  A factfinder must make an objective evaluation of the circumstances surrounding the time that Trustees gave Ulico notice in order to determine whether the circumstances known to the insured at a particular time would suggest to a reasonable person the possibility of a claim.  *Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.*, 288 F. Supp. 2d 302, 311 (E.D.N.Y. 2003) (refusing to grant summary judgment on timeliness of notice of occurrence because the "question of insured defendants' reasonableness remains a disputed issue of material fact…").  The Trustees cannot seriously contend that the determination of whether the period during they waited to notify Ulico after they became aware of the Fund's severe and looming financial difficulties is reasonable is not a question of fact.  *Id.* at 311; *Christensen v. Allstate Ins. Co.*, 218 N.Y.S.2d 426 (N.Y. Sup. 1961) (holding that the reasonableness of insured's delay in giving notice of occurrence is a question to be determined by a factfinder).  Thus, if the Court even reaches this issue, it

HISCOCK & BARCLAY, LLP

should deny summary judgment to Trustees because they have failed to establish the absence of any material fact issue.

**B.  *Material Issues of Fact Remain as to Ulico's Eighth Affirmative Defense Based on the Requirement that the Trustees Meet Conditions Precedent***

    **1.  The Trustees did Not Meet the First Condition Precedent – Notice**

The first condition the Trustees are required to meet in order for coverage under the policy to apply is notice.  Even if the Court denies Ulico's motion, as discussed above, the Trustees have not demonstrated the absence of undisputed facts regarding whether the Trustees gave sufficient and timely notice.

    **2.  The Trustees did Not Meet the Third Condition Precedent – No Material Misrepresentations**

The third condition Trustees are required to meet in order for coverage under the policy to apply is the absence of material misrepresentations made by them.  Ulico disputes the Trustees' assertion that they did not make any material misrepresentations in the policy applications.  Specifically, when asked on their policy applications whether the Fund or Trustees knew of any circumstances which may result in a claim asserted against the Fund or Trustees for "actual or alleged" omissions, the Trustees answered "no." Ulico's Response to Interrogatory No. 6 (10)(b).  These responses are material misrepresentations.  This Court has already recounted in its February 28, 2003 Decision and Order in the underlying case the various communications that the Trustees received, long before the Policy was issued, advising them of the Fund's dire straits in terms of funding.  *See* Decision and Order at 11-12.  Needless to say, these facts were never disclosed to Ulico on the application.  Had they been, Ulico would not have issued the Policy.  A misrepresentation is material where it would have caused Ulico to either refuse to issue the policy or raise the policy premium had it known the truth.  *Christiania General Ins. Corp. of New York v. Great Amer. Ins. Co.*, 979 F.2d 268, 278-79 (2d Cir. 1992); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hicks, Muse, Tate & Furst, Inc.,* 2002 WL 1313293 (S.D.N.Y. 2002).  Whether the Trustees here made

HISCOCK & BARCLAY, LLP

misrepresentations and whether those misrepresentations were material are disputed questions of fact that cannot be determined on summary judgment.   *City of Utica, N.Y. v. Genesee Mgmt., Inc.*, 934 F. Supp. 510, 519 (N.D.N.Y. 1996) (denying summary judgment where questions of fact existed as to whether insured withheld information, what information insured withheld, and whether insurer would have considered such information in its decision to grant or deny coverage).   Therefore, even if the Court finds that neither the "insured vs. insured" exclusion nor the insufficient contributions exclusion precludes coverage, the undisputed facts demonstrate that the Trustees withheld vital financial information from their policy applications.[14]

**C.   This Court Should Deny the Trustees' Motion for Summary Judgment on Ulico's Ninth Affirmative Defense Because  the "Insured vs. Insured" Exclusion Bars Coverage**

The Trustees have also moved for summary judgment on Ulico's Ninth Affirmative Defense, in which Ulico asserts that the "insured vs. insured" exclusion bars coverage.  Ulico agrees that no material facts are in dispute regarding this affirmative defense, but, as demonstrated above, believes that the exclusion is applicable on its face and warrants granting summary judgment in Ulico's favor.  In any event, as discussed above, this Court should deny Trustees' Motion for Summary Judgment seeking to dismiss Ulico's Ninth Affirmative Defense.

**D.   This Court Should Deny the Trustees' Motion for Summary Judgment on Ulico's Tenth Affirmative Defense Because the Punitive Damages Exclusion Bars Coverage**

The Trustees argue that Plaintiffs have not stated a claim for punitive damages in their Second Amended Complaint, and as a result, the exclusion barring coverage for "any claim for, or arising out of

---

[14] If this Court does make a ruling on this issue as a matter of law, it should be a ruling that Trustees did make material representations on their 1998 application.  *Compare May 4, 1998 facsimile from D. Bodewes to Lawley Services, Inc.*, an insurance broker, enclosing the Fund's Application for Trustee and Fiduciary Liability Insurance Renewal (answering "No" to Question No. 10, which reads, "Is the Trust Fund or any of the Trustees aware of any circumstances which may result in any claim being made against the Trust Fund or any of the present or past Trustees for actual or alleged errors or omissions? (Except claims for benefits)") *with April 13, 1999 Letter from Michael Kaplan of the Segal Company to*

HISCOCK & BARCLAY, LLP

punitive damages…" does not apply.  As a factual matter, they are incorrect.  In the Second Amended Complaint, Plaintiffs clearly seek punitive damages.  <u>Second Amended Complaint</u>, ¶ 5.  Nevertheless, Ulico's Tenth Affirmative Defense only purports to establish that there is no coverage *to the extent of any punitive damages sought*; it does not purport to exclude coverage for the underlying claim as a whole solely because the case includes a claim for punitive damages (though Ulico certainly does contend that the case as a whole is not covered for other reasons).  To the extent that Trustees suggest that the inclusion of punitive damages in the claim does not defeat coverage of the matter as a whole, Ulico agrees.  Moreover, the language of the exclusion is effectively redundant and immaterial to the Policy, as New York law specifically precludes insuring against punitive damages as a policy matter.  *Home Ins. Co. v. American Home Products Corp.*, 75 N.Y.2d 196, 200-201 (N.Y. 1990).

### E.   This Court Should Deny Summary Judgment on Ulico's Eleventh and Fourteenth Affirmative Defenses Because Material Facts are in Dispute as to Whether the Intentional Harm or Violation of a Statute Exclusions Bar Coverage

Ulico's Eleventh Affirmative Defense asserts that the exclusion for claims that are the result of intentional harm bars coverage.  And its Fourteenth Affirmative Defense asserts that the exclusion for any act "which is, or alleged to be, the willful or reckless violation of any statute."  Trustees have not established the absence of any genuine issues of material fact regarding these affirmative defenses insofar as the underlying complaint specifically alleges "misfeasance" and "malfeasance" on the part of the Trustees, and there has not yet been an ultimate determination as to the nature of those actions.  Indeed, Plaintiffs ask for punitive damages, which can only be awarded for reckless or intentional behavior. It appears on the face of the pleadings that intentional acts have been pled, but unless the Court concludes that one of the other exclusions applies as a matter of law thereby ending the case, the final determination

(..continued)
*Thomas Burke* (stating "[A]s we reported in 1996 and again in 1998, the Fund is projected to run out of money in or about fiscal year 2008-9.").

HISCOCK & BARCLAY, LLP

of the applicability of the policy exclusion would have to await a final decision on the merits of the underlying action.

Additionally, the Court has already concluded that "Plaintiffs [in the underlying action] also claim that, to the extent that the failure to collect delinquencies constituted an extension of credit between the Plan and the employers, the trustees violated ERISA's prohibited transaction provisions set forth at 29 U.S.C. §§ 1106(a)(1) and 1106(b)(2)."  Decision and Order at 4, n.2.  The Court also suggested that Trustees' conduct may have been a violation of "the minimum pension plan funding and waiver provisions of ERISA and the Internal Revenue Code."  Decision and Order at 3 (stating that certain of Trustees' actions were "ostensibly in accordance" with those provisions).  Therefore, while Trustees now argue that there is no issue in the case as to their intentional acts or violations of statutes having caused any of the alleged damages, the Court has apparently already recognized otherwise.  It therefore should not now grant summary judgment for Trustees as there is, at a minimum, an issue of material fact as to whether these exclusions will bar coverage.

### F. This Court Should Deny Summary Judgment on Ulico's Thirteenth Affirmative Defense Because Ulico is Not Responsible for Claims Expenses at this Time

The Trustees' argument here is twofold – that Ulico should be required to defend Trustees and also reimburse their attorneys' fees to date.  Neither of these propositions has merit.  First, as discussed in Section II, above, Ulico has no duty to defend.  Second, pursuant to the explicit terms of the Policy, even if Ulico could theoretically later be required to reimburse the Trustees for expenses incurred in connection with their defense of the underlying litigation *if* the claim is at some point determined to be covered, Ulico is not required to pay any expenses for claims (including attorneys' fees) unless and until such a coverage determination is made.

Moreover, it is clear that Ulico is not required to advance attorneys' fees to the Trustees prior to the resolution of Plaintiffs' complaint.  The policy at issue in *In re Kenai Corp.*, 136 B.R. 59 (S.D.N.Y.

HISCOCK & BARCLAY, LLP

1992), contained a definition of coverage virtually identical to the definition contained in the contract at

issue here.  There, as here, the policy contained only a duty to reimburse, and not a duty to defend, as the

*Kenai* court noted:

> Unlike duty to defend policies, which require the insurer to defend claims even if
> they are only *arguably* entitled to coverage, policies requiring the insurer to
> reimburse damages and defense costs related to wrongful acts entitle the insured to
> costs only when the underlying claims *are* covered by the policy.

*Id.* at 64.  The court in *Kenai* held that the insurer was not obligated to advance attorneys' fees before

resolution of the underlying complaint.  It based its decision, in part, on the fact that such a holding would

mean that insurers would inevitably pay some losses not covered by their policies, which would prejudice

insurers even if insureds were required to return those undeserved funds.  *Id*.  The court went on to hold

that the "wrongful act" language in the policy there suggested that the insurer was not required to

reimburse the insured until the underlying complaint was resolved, as the policy contained no plain and

unambiguous language dictating the timing of such payments.  *Id.; See also In re Ambassador Group,*

*Inc. Litigation*, 738 F. Supp. 57 (E.D.N.Y. 1990) (holding insurer was not responsible for interim fee

payments to insured).  Under the plain terms of the Policy, Ulico is not responsible for reimbursing

Trustees' claims expenses until the underlying complaint is resolved and it has been determined that such

resolution constitutes a "loss" under the Policy.

### G.  This Court Should Deny Summary Judgment on Ulico's Nineteenth Affirmative Defense Because Material Facts are in Dispute as to Whether the Trustees Made Material Representations

For the reasons described above in response to the Trustees' Motion for Summary Judgment on

Ulico's Eighth Affirmative Defense (Section IV.B.2), specifically regarding the existence of disputed

material facts concerning the Trustees' material misrepresentations, this Court should deny summary

judgment on this affirmative defense.

- 22 -

## CONCLUSION

For the foregoing reasons, the Court should grant Ulico's motion for summary judgment, and deny coverage because both the "insured vs. insured" and insufficient contributions exclusions are applicable based on undisputed facts, as demonstrated above and in Ulico's motion papers.  By effectively reading two critical exclusions right out of the Policy, the Trustees have attempted to dramatically expand the Policy's coverage where it was clearly designed to cover a narrower band of claims, and expressly provided that it was *not* intended to cover the Fund's insolvency, which is the plain cause and crux of the underlying litigation.

Furthermore, the Court should deny the defendants/third-party plaintiffs' cross-motion for summary judgment, because not only are the "insured vs. insured" and insufficient contributions exclusions applicable, Ulico is not obligated to defend the Trustees pursuant to the unambiguous terms of the policy.

Dated:  March 26, 2004
        Rochester, New York

                                        Respectfully submitted,

                                        **HISCOCK & BARCLAY, LLP**

                        By:      _____/s_____
                                        Anthony J. Piazza, Esq.
                                        apiazza@hiscockbarclay.com
                                        Attorneys for *Ulico Casualty Company*
                                        **Office and P.O. Address**
                                        2000 HSBC Plaza
                                        Rochester, New York   14604-2404
                                        Tel:  (585) 325-7570

        Of Counsel:     **SHAW PITTMAN LLP**
                                        Daniel Aronowitz, Esq.
                                        Deborah B. Baum, Esq.
                                        **Office and P.O. Address**
                                        1650 Tysons Boulevard
                                        McLean, Virginia  22102-4859
                                        Tel:  (703) 770-7914

HISCOCK & BARCLAY, LLP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 26, 2004, I electronically filed the foregoing Memorandum of Law in Opposition to Defendants/Third Party Plaintiffs' Motion For Summary Judgment, with the Clerk of the District Court using the CM/ECF System, which sent notification of such filing to the following:

R. Scott DeLuca, Esq.
Damon & Morey
298 Main Street
1000 Cathedral Place
Buffalo, NY 14202

Mark A. Costello, Esq.
Boylan, Brown, Code, Vigdor & Wilson LLP
2400 Chase Square
Rochester, NY 14604

Jeffery F. Reina, Esq.
Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP
42 Delaware Avenue, Suite 300
Buffalo, NY 14202

Kevin Ricotta, Esq.
Ricotta & Personius
1112 Main Place Tower
350 Main Street
Buffalo, NY 14202

And, the undersigned further certifies that I have mailed by the United States Postal Service the document to the following non-CM/ECF participants:

Lawrence C. Brown, Esq.
360 Dingens Street
Buffalo, NY 14206

Richard A. Levy, Esq.
Levy, Ratner & Behrozzi, PC
80 Eighth Avenue
New York, NY 10011

HISCOCK & BARCLAY, LLP

- 24 -

Michael W. Rickard, Esq.
24A Old Lime Road, #4
Williamsville, NY 14221

Daniel J. Sperrazza, Esq.
Cohen & Lombardo, PC
343 Elmwood Avenue
Buffalo, NY 14222

**HISCOCK & BARCLAY, LLP**

By:      <u>     /s                            </u>
            Anthony J. Piazza, Esq.
            apiazza@hiscockbarclay.com

HISCOCK & BARCLAY, LLP