UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CURTIS ZAMERSKI and RICHARD KOHL,

                                        Plaintiffs,

vs.                                                    Civil Action No.: 01-CV-0365C

TERRENCE L. BODEWES, JAMES MALONEY,
VINCENT FETES, ERNEST BOUCHARD,
THOMAS HERR, DARYL BODEWES,
GEORGE FERRARO and JAMES BIDDLE, SR.,
personally and in their capacities as Trustees
and plan fiduciaries,

                                        Defendants.

TERRENCE L. BODEWES, JAMES MALONEY,
VINCENT FETES, DARYL BODEWES,
JAMES BIDDLE, SR., GEORGE FERRARO and
THOMAS HERR,

                        Third-Party Plaintiffs,

vs.

ULICO CASUALTY COMPANY,

                        Third-Party Defendant.

**REPLY MEMORANDUM OF LAW ON BEHALF OF
DEFENDANTS/THIRD-PARTY PLAINTIFFS
TERRENCE L. BODEWES, THOMAS HERR,
JAMES BIDDLE, SR., AND GEORGE FERRARO
IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**BOYLAN, BROWN, CODE,**
  **VIGDOR & WILSON, LLP**
Mark A. Costello, Esq., of Counsel
***Attorneys for Defendant and***
***Third-Party Plaintiff Terrence L. Bodewes***

**COHEN & LOMBARDO, P.C.**
Daniel J. Sperrazza, Esq., of Counsel
***Attorneys for Defendant and***
***Third-Party Plaintiff Thomas Herr***

**DAMON & MOREY LLP**
R. Scott DeLuca, Esq., of Counsel
***Attorneys for Defendants and***
***Third-Party Plaintiffs James Biddle, Sr.***
***and George Ferraro***

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................i

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ............................................................................................................ 3

I.   ULICO ADMITS THAT THE INSURED VERSUS INSURED
     EXCLUSION IS NOT A BAR IN THIS CASE AND
     MISSTATES ERISA STUTORY AND CASE LAW. ....................................... 3

     A.  Ulico Admits Mismanagement Of Assets Is A Covered Claim ................ 4

     B.  Contrary To Ulico's Assertions, There Are No Other
         Sections Of ERISA That Permit Damages To Be Paid
         To An Individual As Opposed To A Plan ................................................. 6

     C.  ERISA Section 502(a)(3) Only Provides Equitable Relief. ...................... 6

     D.  Ulico Misstates The Legal Basis Of The *Firestone* Decision;
         Benefits Claims Are *Not* Fiduciary Claims ........................................... 8

     E.  The Insured Versus Insured Exclusion Does Not Apply
         To Plaintiffs Zamerski And Kohl. .......................................................... 8

II.  EVEN IF THIS COURT DETERMINES THAT ULICO DOES NOT
     HAVE A DUTY TO DEFEND, ULICO NEVERTHELESS HAS A DUTY
     TO PAY DEFENDANTS' CLAIMS EXPENSES AS THEY ARE INCURRED. ....... 10

III. ULICO'S AFFIRMATIVE DEFENSES EITHER SHOULD BE
     STRICKEN OR PRESENT NO IMPEDIMENT TO AWARDING
     DEFENDANTS CLAIMS EXPENSES AT THIS TIME. ................................... 20

     A.  No Issue Of Material Fact Exists To Preclude Dismissal
         Of Ulico's Seventh Affirmative Defense (Insufficient Notice). .............. 20

         1.  *The Segal Letter Did Not Give Notice of A Potential Claim.* ............. 21

         2.  *Defendants First Received Notice of An Occurrence in May 1999* ....... 23

         3.  *Defendants Gave Timely Notice* ..................................................... 24

     B.  No Issue Of Material Fact Exists To Preclude Dismissal
         Of Ulico's Eighth Affirmative Defense Regarding Conditions Precedent. ............ 25

*1.  The Trustees Did Meet The First Condition Precedent With Respect To Notice*. ... 25

*2.  The Trustees Did Meet The Third Condition Precedent With Respect To No Material Misrepresentations* ........................................................... 26

**C.  No Issue Of Material Fact Exists To Preclude Dismissal Of Ulico's Ninth Affirmative Defense Regarding The "Insured vs. Insured" Exclusion** .............................................. 27

**D.  Ulico's Tenth Affirmative Defense Should Be Dismissed To The Extent That It Seeks Dismissal Of Claims That Do Not Relate To The Issue Of Punitive Damages.** ................................ 27

**E.  No Issue Of Material Fact Exists To Preclude Dismissal Of Ulico's Eleventh And Fourteenth Affirmative Defenses Regarding Policy Exclusions Relating To Intentional Harm Of Violation Of Statutes** .................... 27

**F.  No Issue of Material Fact Exists to Preclude Dismissal of Ulico's Thirteenth Affirmative Defense Regarding Payment of Claims Expenses**. .......... 28

**G.  No Issue of Material Fact Exists to Preclude Dismissal of Ulico's Nineteenth Affirmative Defense Regarding Material Misrepresentations of Fact.** ................. 29

**CONCLUSION** ............................................................................................. 30

### PRELIMINARY STATEMENT

Defendants/Third-Party Plaintiffs Terrence L. Bodewes, Thomas Herr, James Biddle, Sr., and George Ferraro [herein "Defendants"] respectfully submit this Reply Memorandum of Law in opposition to the summary judgment motion submitted by Third-Party Defendant Ulico Casualty Company [herein "Ulico"], and in support of Defendants' cross-motion for summary judgment.

The principal questions presented on this motion are twofold: (1) whether Ulico can absolve itself from all liability under the fiduciary insurance policy in question by resorting to the "insured versus insured" exclusion of the Trustee and Fiduciary Liability Insurance Policy issued by Ulico [herein "Policy"], because the claims asserted by plaintiffs—as required by law—have been made on behalf of the Buffalo Carpenter's Health Care Premium Benefit, Annuity & Pension Funds [herein "the Plan"]; and (2) whether Ulico can avoid its obligation to pay the Defendants' claims expenses as they are incurred.  Defendants, as discussed herein and more fully explicated in their original Memorandum of Law in Support of the Cross-Motion for Summary Judgment and in Opposition to Ulico's Summary Judgment Motion, have shown the court that Ulico's interpretation renders their Policy meaningless and ineffectual.[1]  Oddly, in its Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Ulico *admits* that it *is* obligated to cover a significant claim against Defendants and *admits* that the insured versus insured exclusion presents *no* impediment.

Ulico in this action has assumed an indefensible position that renders suspect all its fiduciary policies to the many benefit plans it insures.  The difficulty in Ulico's position results

---

[1] Plaintiffs, in their brief submitted as *amici*, echo Defendants' assessment that Ulico's interpretation renders the Policy meaningless.

in an argument and legal memorandum that are internally inconsistent and self-contradictory.  In support of its argument, Ulico either intentionally misstates current ERISA law or reflects a fundamental misunderstanding of that law.  Whatever the reason for its untenable position, Ulico seeks to have this court ignore or misapply long-standing statutory law and legal precedent.

Ultimately, this Court must grant Defendants' summary judgment motion, deny Ulico's summary judgment motion, and order Ulico to begin providing Defendants with coverage under the Policy, including its immediate and on-going duty to pay Defendants' claims expenses as they are incurred.

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

**ULICO ADMITS THAT THE INSURED VERSUS INSURED EXCLUSION IS NOT A BAR IN THIS CASE AND MISSTATES ERISA STUTORY AND CASE LAW.**

ERISA creates two primary causes of action for a plan participant to recover money:  one for unpaid benefits[2], ERISA §502(a)(1)(B), as amended, 29 U.S.C. §1132(a)(1)(B), and one for breaches of fiduciary duty, ERISA §§409, 502(a)(2), as amended, 29 U.S.C. §§1109, 1132(a)(2). Section 409 provides that those found liable for breaches of fiduciary duty "must make good to such plan any losses to the plan resulting from such breach."  29 U.S.C. §1109.    By law, therefore, damages for breach of fiduciary duty claims must be asserted on behalf of or for the benefit of a plan, so any damages recovered are paid to the plan.  There is no right to personal recovery and the Supreme Court has confirmed this. *See* <u>Massachusetts Mutual Life Insurance Co. v. Russell</u>, 473 U.S. 134 (1985); *see also*, <u>Owen v. Soundview Financial Group</u>, 208 F.3d. 203 (2nd Cir. 2000).  The Policy in issue in this case is one that insures *solely* against fiduciary breaches.  Ulico, however, has raised the anomalous argument that fiduciary breach claims fall within the "insured against and insured" (the Plan versus the Trustees) exclusion in the Policy and that Ulico, therefore, is relieved of its obligations to cover any such claims.  Defendants have noted that Ulico's position negates the Policy because *all* breach of fiduciary duty damages claims, by law, must be asserted on behalf of a Plan.  In response, Ulico asserts that Defendants are incorrect because there are instances in which certain parties may commence an action under

---

[2] Benefits claims are akin to breach of contract claims and can be commenced by a participant in a Plan to collect unpaid benefits.  Such claims are not covered by the Policy in question (Policy Endorsement 4) and are not a subject of this litigation.

ERISA where the relief demanded does not necessarily go to the Plan and cites what Ulico contends are cases and law that support its position.   As discussed herein, Ulico misstates statutory law and decisional authority, straining to find instances in which the Policy might have applicability; as part of its argument, Ulico inadvertently admits that covered claims have been asserted and that the insured versus insured exclusion presents no impediment in this case.

### A.      Ulico Admits Mismanagement Of Assets Is A Covered Claim.

In an attempt to show that its Policy is not rendered meaningless by Ulico's strained interpretation, Ulico lists various claims that (according to Ulico) would be covered by the Policy.  Ulico states as follows:

> For example, had a claim been brought by Fund participants (or the Department of Labor) for breach of fiduciary duty pursuant to the Employee Retirement Income Security Act ("ERISA") Section 404(a)(1)(B), 29 U.S.C.§1104(a)(1)(B), **it would have been covered** if the participant alleged that the Trustees acted imprudently regarding the investment of fund assets.

Ulico's Memorandum of Law in Opposition to Defendants/Third-Party Plaintiffs' Motion for Summary Judgment [herein "Ulico M.O.L."], p. 11, n.8.

In making this point, Ulico admits that claims asserted *on behalf of* a plan are covered claims.  First, Plaintiffs *have* alleged in this action that the Defendants violated ERISA Section 404(a)(1)(B) and 404(a)(1)(C) (imprudently invested Plan monies and failed to diversify plan investments).  *See* Second Amended Complaint, ¶¶52-69; *see also*, Plaintiffs' Motion for Summary Judgment, currently pending before this Court, dated October 14, 2003.  In fact, the Plaintiffs have a motion for summary judgment solely on these issues pending before the Court.[3]

---

[3] The court has agreed to hold that motion in abeyance while Ulico's and Defendants' respective motions for summary judgment are determined.

Second, in breach of fiduciary actions alleging a violation of ERISA Section 404(a)(1)(B) or 404(a)(1)(C), the damages recovered are paid to the Plan, not to the individuals asserting the claim.  *See* 29 U.S.C. §§1109 & 1132(a)(2); ERISA Sections 409 and 502(a)(2).   Ulico, therefore, complains that claims asserted on behalf of a plan are prohibited by the insured versus insured exclusion, but cites as an example of a covered claim a claim that must be asserted *on behalf of* a plan.   Ulico's assertion that such claims would be covered, therefore, is doubly inconsistent:   Ulico inadvertently admits that a claim asserted in this action is covered *and* further admits that a fiduciary claim asserted on behalf of the Plan (such as claim of mismanagement of fund investments) *is* a covered claim. [4]

---

[4] Ulico's inconsistent argument may arise from its misunderstanding of the ERISA statute: Ulico states that "had a claim been brought. . .*pursuant to*. . .404(a)(1)(B). . ." (Ulico's reply Memorandum of Law, p. 11, fn. 8), Plaintiffs' claim would have been covered.  No claims, however, can be asserted under section 404 (29 U.S.C. §1104); that section merely lists "Fiduciary Duties" under ERISA.   Section 502 (entitled "Civil Enforcement"), exclusively, sets forth the causes of action that may be stated under ERISA.   29 U.S.C. §1132.  *See, e.g.,* Pilot Life Ins. Co. v. Dedeaux, 481 U. S. 41, 54 (1987); Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) ("The six carefully integrated civil enforcement provisions found in §502(a) of the statute as finally enacted. . .provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.")

**B.     Contrary To Ulico's Assertions, There Are No Other Sections Of ERISA That Permit Damages To Be Paid To An Individual As Opposed To A Plan.**

The fiduciary breach claims Plaintiffs have asserted in this case are precisely the types of claims that Ulico undertook to insure against and which Defendants had a full expectation of being insured against when the Plan purchased the Policy.  In response to Defendants' point that Ulico's application of the insured versus insured exclusion bar negates the Policy, Ulico has presented to this Court cases which Ulico contends show there are, in fact, some instances in which recoveries for breach of fiduciary duty are paid to individuals and not to the Plan.  Those cases, Ulico contends, illustrate that the Policy, still has meaning under Ulico's broad reading of the insured versus insured exclusion.  As discussed herein, Ulico's argument, again, is based on a fundamental misunderstanding of the law and misses its mark by a wide margin.

**C.     ERISA Section 502(a)(3) Only Provides Equitable Relief.**

In search of that illusive section of the law that might support Ulico's assertion that not all fiduciary relief must be paid to the Plan, Ulico cites Section 502(a)(3) of ERISA [29 U.S.C. §1132(a)(3)].  That section of law, however, relates only to *equitable* relief and not to *damages*. For that reason, and as explained more fully herein, Ulico's argument on this point must fail.

Section 502(a)(3) of ERISA provides that one may commence a civil action

> (A) To **enjoin** any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain **other** appropriate **equitable relief** (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

Consistent with the express terms of this section of law, Courts interpreting it uniformly have noted that it relates *only* to equitable relief.  *See, e.g.*, <u>Great West Life & Annuity Ins. Co. v.</u>

Knudson, 534 U. S. 204, 209–10 (2002)[5]; Mertens v. Hewitt Associates, 508 U. S. 248, 257–59 (1993); Crocco v. Xerox Corp., 137 F.3d 105, 107 n.2 (2nd Cir. 1998) (holding that claim under 502(a)(2) is barred because plaintiff is seeking damages on their own behalf; "Nor does [plaintiff] request *injunctive or other equitable relief* under ERISA §502(a)(3)" (emphasis added)).  To be sure, in Varity Corp. v. Howe, 516 U. S. 489 (1996), cited by Ulico, supposedly in support of Ulico's position, the Court held that "subsection 3 [of section 502(a) of ERISA] authorizes *only* 'equitable' relief."  Id. at 510.[6]

The Policy, however, insures against *damages*; it does not cover equitable relief.  Section 1 of the Policy (entitled "Coverage") states that it is Ulico's obligation "To **pay** on behalf of the insureds any **Loss**. . . ."  Under the Policy, "Loss" is defined as "the **amount** an insured is legally liable **to pay** in satisfaction of claims insured hereunder, and shall include **damages**. . ."  *See*

---

[5] The Court in Great West Life held that even seeking restitution in the nature payment of damages (as opposed to a return of segregated assets) is not a form of equitable relief permitted by Section 502(a)(3). *See* 534 U. S. at 211 – 215.

[6] The Supreme Court has further limited the availability of Section 502(a)(3) by saying Section 502(a)(3) relief is unavailable if other appropriate relief is available elsewhere under Section 502. *Varity*, 516 U.S. at 515.  In response, courts have refused to allow claims for breach of fiduciary duty under Section 502(a)(3) when an appropriate remedy is available by bringing a Section 502(a)(1) individual benefit claim.  *See* Montesano v. Xerox Corp. Ret. Income Guarantee Plan, 117 F. Supp. 2d 147 (D. Conn. 2000), *aff'd*, 256 F.3d 86 (2nd Cir. 2002).  Likewise, a claim for breach of fiduciary under Section 502(a)(3) would not be allowed where, as in this case, an appropriate remedy (damages) is available by bringing a Section 502(a)(2) fiduciary breach claim.

Ulico Casualty Company's Appendix to Local Rule 56.1 Statement of Material Facts [herein "Ulico's R.56 App."], **Tab 1**, Section I and II(f). Ulico's assertion that personal causes of action under ERISA §502(a)(3) are the types of cases against which Ulico insured, therefore, contradicts the plain language of the Policy, and again would render the Policy meaningless. (Literally, Ulico's convoluted interpretation would cause their coverage to be "we will pay damages only for that category of ERISA cases in which damages may *not* be sought.")

### D.  Ulico Misstates The Legal Basis Of The *Firestone* Decision; Benefits Claims Are *Not* Fiduciary Claims.

Ulico cites the Supreme Court's decision in Firestone Tire & Rubber Co v. Bruch, 489 U.S. 101 (1989), as an example of another category of cases under which a participant personally may seek damages against a trustee for breach of fiduciary duty (as opposed to asserting a claim on behalf of the plan).[7] Ulico's reliance on Firestone, however, is misplaced. The Firestone case was brought under ERISA §502(a)(1), *not* under §502(a)(2); it was a failure to pay benefits claim, *not* a fiduciary breach claim: "The action was based on §1132(a)(1) [§502(a)(1)]. . . ." Id. at 106.

### E.  The Insured Versus Insured Exclusion Does Not Apply To Plaintiffs Zamerski And Kohl.

Plaintiffs, Curtis Zamerski and Richard Kohl, respectively are a Plan participant and a Plan annuitant. Their claims are not barred by the insured versus insured exclusion and Ulico does not contend they are barred. Ignoring this fact, Ulico insists that because Thomas Burke

---

[7] *See* Ulico's Memorandum of Law, p. 10: "*Firestone* involved a breach of future duty claim against a corporate employer stemming from its decision not to pay severance benefits pursuant to a termination pay plan."

was once a plaintiff in the principal action that Zamerksi's and Kohl's claims must also be excluded from coverage.[8]   Ulico, however, offers no law or logic to support that position.[9]

For the foregoing reasons, Ulico's motion for summary judgment on the insured versus insured exclusion should be denied and its affirmative defense asserting that exclusion as a bar should be stricken.

---

[8] It is Ulico's position that if a covered claim is joined with claims that *might* not be covered, Ulico has no duty to pay claims expenses under the Policy.  Even if an improper uncovered claim were later dropped, Ulico contends that you look at a pleading only at its initial filing to determine whether an insurer need cover or pay claims expenses.  As will be discussed in greater length in Point II of this Memorandum, *infra*, Ulico's position renders the Policy a fragile guarantee that can be negated by joinder of a unfounded claim with a host of other covered claims.

[9] Ulico contends that the purpose of the insured versus insured exclusion is to prevent collusive lawsuits, but offers nothing to suggest this action—which has cost Defendants hundreds of thousands of dollars in defense fees—is in any way collusive. To be sure, Burke was joined as a plaintiff so that the Plan could sue the actuary, Segal Company; once Segal settled the claim against it, Burke withdrew as a plaintiff.

<u>POINT II</u>

**EVEN IF THIS COURT DETERMINES THAT ULICO DOES NOT HAVE A DUTY TO DEFEND, ULICO NEVERTHELESS HAS A DUTY TO PAY DEFENDANTS' CLAIMS EXPENSES AS THEY ARE INCURRED.**

The language of the Ulico Trustee and Fiduciary Liability Insurance Policy clearly places an on-going obligation on Ulico to pay Defendants' claims expenses, including attorneys' fees and costs, with regard to the claims in the underlying pension fund litigation.  Accordingly, even if the Ulico policy does not include a duty to defend Defendants, this Court must grant Defendants' summary judgment motion and order Ulico to pay any and all claims expenses that Defendants' are "legally liable to pay."

The Ulico Policy is clearly a liability insurance policy, as it provides that the insurer will pay "on behalf of the Insureds any Loss, subject to the limits of liability, as the Insureds acting in their capacity as Trustees or employees of the Trust described in the Declarations, shall become legally obligated to pay." <u>Ulico's R.56 App.</u>, **Tab 1**, Section I (Coverage A).  Endorsement #1 of the Ulico Policy defines the term "Loss" as "the amount an Insured is ***legally obligated to pay*** in satisfaction of claims insured hereunder, and shall include ***Claims Expenses***, damages, judgments or settlements." *See* <u>Ulico's R.56 App.</u>, **Tab 1**, Endorsement #1 (3) (emphasis added). Claims expenses are defined by the Policy as "fees charged by an attorney" during the defense of a claim. *See* <u>Ulico's R.56 App.</u>, **Tab 1**, Section II(c).

Based on this language, it is clear that Ulico is required to pay the insured's (*i.e.*, Defendants) claims expenses when they were and are incurred.  Certainly, it cannot be disputed that the insureds become "legally obligated to pay" their attorneys' fees (*i.e.*, claims expenses under the Ulico policy) upon receipt of an invoice.  Examining insurance policy language very similar to that at issue herein, courts have routinely held that an insurer must pay the insured's

liability for attorneys' fees and costs when such fees and costs are incurred.  This Court should follow these decisions, and order Ulico to pay all claims expenses already incurred by Defendants, as well as those claims expenses that Defendants will incur as the pension fund litigation proceeds.

In Gon v. First State Ins. Co., 871 F.2d 863 (9th Cir. 1989), the Court examined a liability insurance policy with language virtually identical to the liability insurance policy issued by Ulico, and determined that the insured's attorneys' fees and costs must be paid as they are incurred.  Specifically, the First State Insurance policy provided that the insurer would pay "all loss which the insureds shall become '***legally obligated***' to pay." 871 F.2d at 868 (emphasis in original).  Examining that policy provision, the Court concluded that "[t]his language alone supports the district court's ruling that First State must pay legal expenses ***as they are incurred***, because an insured becomes legally obligated to pay legal expenses as soon as the services are rendered." Id. (emphasis added).  Accordingly, based solely on the referenced policy provision, the Court held that, "under the terms of the policy, [the insurer] had a duty to pay legal expenses as they are incurred." Id.

In Okada v. MGIC Indem. Corp., 823 F.2d 276 (9th Cir. 1986), the Court examined another liability insurance policy that defined the term "loss" as "any amount which the [insureds] are legally obligated to pay," including costs related to litigation defense.  823 F.2d at 278.  Based on that language, the Court concluded that "[w]henever 'loss' occurs (*i.e.*, whenever the directors are 'legally obligated to pay' on a covered claim), [the insurer] must pay that amount.  The policyholders thus are assured that they need not expend their own funds in order to receive protection for liability." Id. at 280.  However, in Okada, the Court was faced with additional policy language that provided the insurer with discretion to decide when payments

were to be made.  Nevertheless, the Court ultimately concluded that the insurance company had an obligation to "make contemporaneous payments for legal defense" with regard to claims covered by the policy. Id. at 282.

While the Ninth Circuit faced additional arguments regarding the timing of payments under the policy in Okada (yet, still held that the insurer had an obligation to make contemporaneous payments of the insured's legal expenses), the present matter more closely resembles Gon, where the policy obligated the insurer to cover legal expenses the insured was legally obligated to pay.  Specifically, the Ulico policy does not contain language providing Ulico with any discretion regarding payments that must be made, or the timing of such payments.  Indeed, the Ulico policy only states that payment of loss, including claims expenses, must occur when the insureds are "legally obligated to pay."  See Ulico's R.56 App., **Tab 1**, Endorsement #1 (3).

In Little v. MGIC Indemnity Corp., 836 F.2d 789 (3rd Cir. 1987), the Court examined an insurance policy with language similar to the policy at issue, and determined that the insureds' attorneys' fees and costs must be paid as they are incurred by the insured. Specifically, the insurance policy in Little provided that the insurer was required to pay "all Loss which the Directors and Officers or any of them shall become legally obligated to pay." 836 F.2d at 792. The policy defined "loss" to include costs related to the "defense of legal actions." Id.

The Court carefully examined the policy therein and determined that it was a liability policy, because the obligation to pay arose when the insured became legally obligated to pay.  Id. Indeed, the Court concluded that:

> [u]nder a liability policy,…the insurer's obligation to pay arises as soon as the insured incurs liability for the loss; the insured need not pay the loss first. [Internal citations omitted.]  The language of section 1(D) [i.e., defining the term 'loss'] is entirely consistent

with the characterization of the policy as a liability policy.  A 'loss' is defined as an amount that the insured is 'legally obligated to pay.'  Although this section does not explicitly speak to the timing of the insurer's duty to pay, *the only reasonable interpretation is that this duty arises at the time the insured became 'legally obligated to pay.'*  To infer any other, later time for the insured's duty to pay would be arbitrary because nothing in section 1(D) itself gives any guidance as to when this later time might be.

Id. at 793 (emphasis added).  Accordingly, the Court concluded that the insurer had an on-going obligation to pay the insured's expenses with regard to the "defense of legal actions", as such expenses were incurred. Id.; *see also*, Associated Elect. & Gas Ins. Servs., Ltd. v. Rigas, 2004 U.S. Dist. LEXIS 4498, at *24, 26 (E.D. Penn. March 17, 2004) (noting that Third Circuit's decision in Little was "[l]ike a light illuminating this legal landscape,…[and] definitively addressed the issue of advancement of defense costs under a D&O policy", and concluding that Little "found that the phrase 'legally obligated to pay' in the policy's coverage provisions meant that the insurer's duty to pay defense costs arises contemporaneously with the director or officer's obligation to pay those costs").

In McGinniss v. Employers Reins. Co., 648 F. Supp. 1263 (S.D.N.Y. 1986), the Court noted that "[a]n insurer has a heavy duty to…pay for the defense of its insured." Id. at 1271 (*citing* International Paper Co. v. Continental Cas. Co., 361 N.Y.S.2d 873, 876 (N.Y. 1974)).[10] In that matter, the Court examined another similarly-worded insurance policy, which provided

---

[10]Importantly, "there is no relevant difference between the allegations that trigger an insurer's duty to defend and the allegation that trigger an insurer's obligation to pay defense expenses." Lowy v. Travelers Prop. & Cas. Co., 2000 U.S. Dist. LEXIS 5672, at *6 n.1 (S.D.N.Y. May 1, 2000) (*citing* Inglis v. Dundee Cent. School Dist. Bd. of Educ., 687 N.Y.S.2d 866, 868 (N.Y. Sup. Ct. 1999); PepsiCo, Inc., 640 F. Supp. at 660).

that loss occurred when "the Insured becomes legally obligated to pay…including court costs…and legal expenses." Id. at 1266.  Based on that provision and well-settled insurance law principles, the Court concluded that "the insurer must pay the insured's defenses costs as they are incurred." Id. at 1271 (*citing* Pepsico, Inc. v. Continental Cas. Co., 640 F. Supp. 656 (S.D.N.Y. 1986)).  Indeed, the Court stated that "[w]ithout contemporaneous payment of defense costs the insurance 'would not truly protect the insureds from financial harm caused by suits against them.'" Id. (*quoting* Okada v. MGIC Indem. Corp., 608 F. Supp. 383, 387 (D.Hawaii 1985)). Accordingly, the Court ordered the insurer to pay litigation expenses and costs to the insured as they were incurred.

Similarly, in Pepsico, Inc. v. Continental Cas. Co., 640 F. Supp. 656 (S.D.N.Y. 1986), the Court considered when an insurer must pay defense costs.  As with the Ulico policy at issue herein, the Pepsico policy provided that "loss" meant "any amount which the [insureds] are legally obligated to pay…and shall include…amounts incurred in the defense of legal actions." Id. at 659.  While the insurer argued that it was not required to pay the insured's legal expenses until the conclusion of the litigation because of a policy exclusion, the Court nevertheless concluded that such a provision "does not excuse [the insurer] from its obligation to pay defense costs ***as they are incurred***." Id. (emphasis added).  Indeed, based on the referenced policy language, the Court held that "once the 'loss' or attorneys fees were incurred by the directors and officers, [the insurer's] responsibility to reimburse the directors and officers attached." Id.   Thus, the Court ordered that the insurer had an obligation (in the past and in the future) to pay the insured's defense costs as they were incurred. Id. at 660.  Furthermore, the obligation to pay

defense expenses as they are incurred applies ***even where there is a dispute over coverage***.[11] Id.; *see also*, National Union Fire Ins. Co. of Pittsburgh, Penn. v. Ambassador Group, Inc., 556 N.Y.S.2d 549, 553 (1ˢᵗ Dep't 1990) (holding that even though there may not be duty to defend, "under certain policies, directors and officers liability insurers are required to make contemporaneous interim advances of defense expenses ***where coverage is disputed***") (*citing* Gon, 871 F.2d 863; Okada, 823 F.2d 276; Pepsico, 640 F. Supp. 656) (emphasis added); *see also*, In re Country Seat Stores, Inc., 280 B.R. 319, 329 (Bankr. S.D.N.Y. 2002) (noting that "the law in this district is clear that 'once the action against the insured has been found to be within the coverage of the policy the insurer must pay the insured's defense costs ***as they are incurred***'") (*quoting* McGinniss, 648 F. Supp. at 1271; *citing* Pepsico, 640 F. Supp. at 659-60) (emphasis added).

In Nu-Way Environmental, Inc. v. Planet Ins. Co., 1997 U.S. Dist. LEXIS 11884 (S.D.N.Y. Aug. 5, 1997), the Court examined another liability policy to determine when an insurer is required to pay an insured's defense costs. The policy at issue, like the Ulico policy, required the insurer to indemnify the insured against "Loss the insured has or will become

---

[11]Incredibly, and inconsistent with its own argument, Ulico *admits* that the purpose for writing the Policy so that attorneys fees were reimbursed, rather than advanced by Ulico, was for *the benefit of the trustees*, not to determine whether liability existed before Ulico had an obligation to pay such expenses:

> D&O policies historically have not been written on a 'duty to defend' basis due to the fact that the policies were intended to cover the very 'brain trust' of the corporation and these individuals did not wish to have such delicate matters as their personal defense left to the control of an insurance company.

Ulico Memorandum of Law, p. 5.

*legally obligated to pay*," including defense costs.  Id. at *2 (emphasis added).  The court began its analysis by announcing that the "*general rule*…is that absent express language to the contrary, **an insurer that does not undertake the duty to defend the insured has a duty to pay the insured's defense costs as they come due**."  Id. at *6 (emphasis added).  The Court also noted that it had previously held that "where the insurance policy does not impose a duty to defend, provides for payment of defense costs, and is silent as to the timing of payments of such costs, *the insurer has a duty of contemporaneous payment of defense costs*."  Id. at *7 (collecting cases) (emphasis added).  The Court offered a simple explanation for this duty on the part of the insurer—"[w]ithout contemporaneous payment of defense costs the insurance 'would not truly protect the insureds from financial harm caused by suits against them.'"  Id. (*quoting* McGinniss, 648 F. Supp. at 1271).  Accordingly, the Court ordered the insurer to reimburse the insured for costs already incurred, as well as costs that would be incurred in the future.  Id. at *10; *see also*, Fight Against Coercive Tactics Network, Inc. v. Coregis Ins. Co., 926 F. Supp. 1426, 1430-34 (D.Colo.1996) (granting insured's summary judgment motion and declaring that insurer has duty to pay legal expenses as they are incurred).

Indeed, in Federal Ins. Co. v. Tyco Int'l Ltd., 2004 N.Y. Misc. LEXIS 228 (N.Y. Sup. Ct. March 5, 2004), the Court examined a directors and officers liability policy that included an obligation to pay for defense costs.  Id. at *5-6.  Examining New York legal principles regarding the obligation to pay defense costs, the Court stated that "the duty to defend or pay defense costs is construed liberally and any doubts about coverage are resolved in the insured's favor."  Id. at *19 (*citing* Volney Residence, Inc. v. Mutual Ins. Co., 600 N.Y.S.2d 70 (1st Dep't 1993)). Moreover, the Court noted that "an insurer can only invoke a policy exclusion to avoid coverage if it can show that 'the allegations in the complaint cast that pleading solely and entirely within

the policy exclusions.'" Id. (*quoting* International Paper Co. v. Continental Cas. Co., 361 N.Y.S.2d 873 (N.Y. 1974)).  Despite the possibility that some of the claims asserted against the insured might have been excluded under the policy, the Court nevertheless concluded that the insurer was obligated to pay the insured's defense costs. Id. at *21.

In Wedtech Corp. v. Federal Ins. Co., 740 F. Supp. 214 (S.D.N.Y. 1990), the Court examined another directors and officers liability policy with language that required the insurer to pay any losses the insured became legally obligated to pay. Id. at 216.  Examining when the insurer is required to pay the insured's defense costs, the Court held:

> It is also apparent that a beneficiary of the policies would suffer an immediate and direct injury if the Court did not grant the relief plaintiffs seek.  Where an insurance policy obligates the insurer to defend the insured, the insurer must defend the insured in every suit in which the complaint permits proof of facts establishing coverage until the insurer is able to exclude the possibility of any recovery for which it provided insurance. American Home Prod. Corp. v. Liberty Mut. Ins. Co., 565 F. Supp. 1485, 1499 (S.D.N.Y. 1983), *aff'd in relevant part*, 748 F.2d 760, 763 (2nd Cir. 1984). Though the policy at issue does not impose an express duty to defend upon [the insurer], it does provide that [the insurer] will pay on behalf of Wedtech 'all loss' for which Wedtech grants indemnification to its directors, and 'loss' is explicitly defined to include 'defense costs.' ***Courts have established that under such provisions, the insurance company's obligation to reimburse the directors attaches as soon as the attorneys' fees are incurred.*** [Collecting cases; internal citations omitted.]   As a result, the declaration sought by plaintiffs would entitle [the insured] to reimbursement for attorneys' fees as he incurs them unless or until Federal can exclude the possibility of any recovery for which it provided insurance.

Id. at 221 (emphasis added).

Ulico's Memorandum of Law in opposition to Defendants' motion for summary judgment relies on two cases that are inapposite to this issue. *See* Ulico Memorandum of Law, pp.21-22.  Ulico mistakenly relies on the decision in In re Ambassador Group, Inc., 738 F. Supp.

57 (E.D.N.Y. 1990).   In that matter, the Court examined a directors and officers insurance policy; however, the policy at-issue in Ambassador Group did not involve the key language that exists in the Ulico policy—a definition of loss as the legal obligation on the part of the insured to pay claims expenses. Id. at 59.   Indeed, the Ambassador Group policy merely required payment of costs related to the defense of the action, but did not indicate when such a payment must be made. Id. at 59-60.

While examining the holdings in Okada and Pepsico, the Court focused on the fact that those decisions did not involve insurance policies that contained "a material 'other provision'" regarding the payment of claims expenses. Id. at 63.   However, the Court did rely on the fact that the policy involved in the Ambassador Group matter *did* contain an endorsement that provided a priority for payment of a claim liability *before* any claim expenses were reimbursed to the insured. Id. at 60.   Given the priority provision that existed in the Ambassador Group decision, which does not exist in the Ulico liability policy, it is clear that the holding in Ambassador Group is not relevant to this matter and cannot be legitimately relied upon by Ulico.

Ulico also relies on the decision in In re Kenai Corp., 136 B.R. 59 (S.D.N.Y. 1992), for the proposition that an insurer does not have a duty to reimburse an insured's attorneys fees, despite acknowledging that this not a settled issue and that numerous courts have held that such payments must be made.  Id. at 63.   Examining a directors & officers policy, the Court concluded that an insurer is only required to reimburse an insured for defense costs related to claims that are covered by the at-issue policy. Id. at 64.   However, the Court clearly failed to consider the relevant and dispositive holding of New York courts on this issue.   Specifically, in National Union Fire Ins. Co. of Pittsburgh, Penn. v. Ambassador Group, Inc., the Court held that even though there may not be duty to defend, "directors and officers liability insurers are required to

make contemporaneous interim advances of defense expenses [even] ***where coverage is disputed***." 556 N.Y.S.2d at 553 (1st Dep't 1990) (*citing* <u>Gon</u>, 871 F.2d 863; <u>Okada</u>, 823 F.2d 276; <u>Pepsico</u>, 640 F. Supp. 656).  Accordingly, Defendants believe that this Court should reject the holding of <u>In re Kenai</u>, and should adopt the reasoning of the First Department, and the other cases cited above, that a liability insurance policy requires payment of claims expenses (such as attorneys fees and costs), as the insured becomes legally obligated to pay such sums.

In this matter, it is clear that Ulico has a duty to pay the insured's claims expenses when they are incurred.  The Policy clearly reflects that Ulico's liability for such claims expenses occurs when the insured becomes "legally obligated to pay."  To read this Policy language to suggest another, later payment date would be arbitrary and would ignore the clear and unambiguous language of the Policy.  Ultimately, this Court must not read any such non-existent language into the Policy and must order Ulico to comply with its obligation to pay the Defendants' claims expenses as they are incurred.

<u>**POINT III**</u>

**ULICO'S AFFIRMATIVE DEFENSES EITHER SHOULD BE STRICKEN OR PRESENT NO IMPEDIMENT TO AWARDING DEFENDANTS CLAIMS EXPENSES AT THIS TIME.**

Ulico has interposed several affirmative defenses to Defendants' Third-Party Complaint. As discussed herein, those defenses either should be stricken as without merit or present no impediment to awarding claims expenses to Defendants at this time.

A. <u>No Issue Of Material Fact Exists To Preclude Dismissal Of Ulico's Seventh Affirmative Defense (Insufficient Notice).</u>

Ulico asserts that material facts remain regarding the issue of sufficient[12] and timely notice regarding the claim. Ulico *admits*, however, that it received notice of the Plaintiffs' intent to commence the action seven months *prior* to the commencement of the action and fails to address how notice received seven months prior to commencement of an action is untimely.

With respect to the timeliness of said notice, it is undisputed that first notice was given to Ulico by letter of May 14, 1999 issued by Owen Rumelt, Esq., acting as "special counsel" to the Trustees, seven months prior to the commencement of this action. Ulico, however, contends that a periodic reporting memorandum from the Plan's actuaries in August 1998 [herein "Segal Letter"], *see* <u>Ulico's R.56 App.</u>, **Tab 7**, first put the Plan on notice of a potential claim against it.

---

[12] The sufficiency of said notice was addressed in <u>Defendants' Memorandum of Law in Support of Cross-Motion for Summary Judgment and in Opposition to Ulico's Motion for Summary Judgment</u> [herein "Defendants' M.O.L."], Point II(C)(1), and is not disputed in Ulico's opposing memorandum of law and, therefore, will not be repeated. *See* <u>Ulico M.O.L.</u>, pp.21-25.

Ulico's contention that the Segal Letter somehow constitutes notice of a potential fiduciary breach claim against the trustees is not only unwarranted, it is pure invention born of the moment for purpose of this case.

### 1.      *The Segal Letter Did Not Give Notice of A Potential Claim.*

The Segal Letter (with a reference line "Preliminary June 1, 1998 Actuarial Report") sets forth a statement of the financial condition of the fund and is similar to other reports received from The Segal Company. *See* Ulico's R.56 App., **Tab 7**.  Nothing in the letter suggests that any participant or annuitant of the Plan is contemplating any type of fiduciary breach claim against the Plan, nor does the Segal Letter hint or warn of such a claim might be possible.  The Segal Letter is limited solely to a discussion of the financial condition of the Plan.  It appears to be Ulico's position, however, that whenever a company or trust is experiencing financial problems that the directors or trustees, solely from news of negative financials, must assume that they will be sued for fiduciary breaches and must warn their liability insurer of that unfounded speculation.  Ulico has cited no authority that would require this Court to make that unwarranted leap and Defendants know of none.

Ulico asserts that Segal Letter advised the Trustees of "severe financial problems" facing the Plan, and this, in itself, was sufficient to alert the Plan to a claim. *See* Ulico's R.56 App., **Tab 7**.  Contrary to this assertion, the letter itself uses no such language and, in fact, presents many alternative solutions and suggestions to stem the tide.  *See* id.  The Segal Letter further notes the condition of the Plan may be improving slightly. [13]  At the same time, the Segal Letter refers to a

---

[13]The Segal Letter, in fact, noted that, "[w]e do note that the magnitude of the actuarial losses has been diminishing and hopefully this trend will continue with the possibility that the actions

review of the situation with the Trustees.  The Trustees received such status letters from Segal concerning the financial condition of the Plan, dating back many years.  In its brief in opposition to Defendants' summary judgment motion, for example, Ulico refers to a 1996 letter referring to the Plan's financial deficiencies. *See* Ulico M.O.L., p.19, n.14.  Interestingly, Ulico makes no argument that the earlier letter of 1996 constitutes "notice" of a potential claim.

In light of the number of memos and letters which discussed the financial status of the Plan, the August 1998 letter, which Ulico would have this Court consider the "occurrence" under the policy, was simply another financial status report of the Plan. The policy itself offers no guidelines to make a determination if the Segal Letter is the "occurrence".  A good faith belief by an insured that no claim is likely will excuse an insured from giving notice. *See* Safeguard Ins. Co. v. Angel Guardian Home, 946 F. Supp. 221 (1996).

Given the fact that the Plan received similar financial reports to the 1998 letter, without any claim thereafter ensuing, and given the fact that the reports were issued by their own actuary (*i.e.*, no one in a position to bring a claim), it is illogical to presume that a claim would be forthcoming as a result thereof.  Ulico offers no argument to suggest otherwise.  Equally important to note is that notice to Ulico was provided immediately upon receipt of the May 1999 letter from "special counsel" for the Plan advising of a potential claim, seven months prior to the present suit being commenced. *See* Ulico's R.56 App., **Tab 23**.

Given the ambiguous nature of the Segal Letter, the history of the financial reports, the fact that, prior to May, 1999, the Trustees had received no indication from a party who could make a claim against the Plan that a claim would be forthcoming, and the relevant case law

---

that will be required can be reversed in whole or part in the future." *See* Ulico's R.56 App., **Tab 7**.

regarding what constitutes an "occurrence", no clear event prior to the May, 1999 letter can be determined to be an "occurrence" from which the notice requirement of "as soon as practical" can be measured.

### 2.   *Defendants First Received Notice of An Occurrence in May 1999*

Under the Policy, Defendants were obligated to provide written notice to the insurance company, "as soon as practicable" in the event of an "occurrence". *See* Ulico's R.56 App., **Tab 1**, Section VII(2)(a).  The provisions of a policy requiring the insured to give notice to the insurer "as soon as practicable", as well as other ambiguous time references such as "as soon as possible", "promptly", "immediately", or "forthwith", have all been held, under New York State Law, to call for "notice to be given within a reasonable time in view of all the facts and circumstances".  Deso v. London & Lancashire Indem. Co., 164 N.Y.S.2d 689 (N.Y. 1957); Hartford Fire Ins. Co. v. Masternack, 390 N.Y.S.2d 949 (4th Dep't 1977).

In determining what is reasonable under the circumstances, it must first be determined what constitutes an "occurrence" under the Policy.  The term "occurrence" is not defined within the Policy itself.  As treated in greater detail in Defendants' M.O.L., the principles governing the interpretation of insurance contracts are well settled.  *See* Defendants' M.O.L., pp.6-7, 24. Unambiguous provisions are given their plain and ordinary meaning.  But where there is an ambiguity, as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer. United States Fidelity & Guaranty Co. v. Annunziata, 501 N.Y.S.2d 790, 791 (N.Y. 1986); State of New York v. Home Indemnification Co., 495 N.Y.S.2d 969 (N.Y. 1985); Public Service Mut. Ins. Co. v. Levy, 442 N.Y.S.2d 422 (N.Y. 1981); *see also* Defendants' M.O.L., p.24.

In the present case, the Defendants assert that the term "occurrence" is so ambiguous that not until the Defendants were presented with Plaintiffs' counsel's letter of May 14, 1999 advising that the claim would be brought does an actual "occurrence" occur.  In <u>Public Service Mutual</u>, *supra*, the policy required notice upon the  happening of an "unusual occurrence" or upon receiving "notice of a claim or suit".   Both civil disciplinary proceedings and criminal proceeds were commenced against the insured, a dentist, for alleged sexual abuse of a  patient, prior to the civil action being commenced.  Only after the civil proceeding was commenced, did the insured notify the insurer of the "occurrence".   Plaintiff insurance company argued that the civil disciplinary proceedings and criminal proceedings were "unusual occurrences" within the meaning of the policy, and notice should have been provided at that time.    The court disagreed with the insurance company and found the notice timely. In holding for the insured, the Court stated, "That the provisions of the policy could be read to require earlier notice is beside the point.  The term 'unusual occurrence' is, at best, ambiguous, and any ambiguity in the policy must be resolved against the insurer."  <u>Pubic Service Mut. Ins. Co. v. Levy</u>, 442 N.Y.S.2d at 425. In the present instance, it can surely be argued that the bare term "occurrence" without the qualifier, "unusual" is more ambiguous, and presents a more compelling argument to rule in favor of the insured.

The Court must then consider, even if the Segal Letter were found to be a notice letter—which it was not—whether the alleged delay in notice provided by the Trustees was so unreasonable as to constitute an unreasonable delay.

### *3.        Defendants Gave Timely Notice.*

The meaning of the phrase "as soon as practical" is an elastic one, not to be defined in a vacuum. *See* <u>Mighty Midgets, Inc. v. Centennial Ins. Co.</u>, 416 N.Y.S.2d 559 (N.Y. 1979). By no

means does it connote an ironbound requirement that notice be "immediate" or even "prompt" relative as even those concepts often are. *See* id. at 562-63. A ***nine month delay*** in cases where the "occurrence" is much more easily definable, such as an automobile accident, have been held ***not unreasonable***. State Farm Mut. Auto Ins. Co. v. Bush 362 N.Y.S.2d 220 (3rd Dep't 1974). As a matter of law, given the ambiguity of the policy provisions herein and prior case law, the Court must determine that Ulico received timely notice.

Therefore, even presuming a nine-month delay, as a matter of law, notice to Ulico was reasonable under all the facts and circumstances and Ulico's Seventh Affirmative Defense should be stricken.

### B.      No Issue Of Material Fact Exists To Preclude Dismissal Of Ulico's Eighth Affirmative Defense Regarding Conditions Precedent.

#### 1.      *The Trustees Did Meet The First Condition Precedent With Respect To Notice.*

Ulico admits that notice was sent by correspondence dated May 14, 1999. The sufficiency of said notice is addressed in Trustee's Memorandum of Law submitted in its original Memorandum of Law in support of Cross-Motion for Summary Judgment at Point III(C). *See* Defendants' M.O.L., pp.20. The timeliness of said notice is addressed in the foregoing point. Again, construing all facts in the light most favorable to Ulico, this Court must, as a matter of law, dismiss Ulico's Eighth Affirmative Defense and hold that the Trustee's did meet the condition precedent with respect to notice under said policy.

### 2.      The Trustees Did Meet The Third Condition Precedent With Respect To No Material Misrepresentations.

Ulico has failed to produce any evidence which would create a material issue of fact regarding any material misrepresentation of the Trustees.  In its memorandum in opposition to Trustees Cross-Notice of Motion, Ulico cites the Decision of this Court dated February 28, 2003, and implies that the court made a determination that the Trustees knew of the impending circumstances by virtue of the fact that they received notification that the Plan was experiencing some financial difficulties. In the Order, in fact the Court is merely reciting the claim presented in Plaintiff's complaint.  Ulico, in a clear misstatement of the Court's Order indicates the Court "recounted" communications received by the Trustees "advising them [Trustees]" of the Plan's "dire straights." *See* Ulico M.O.L., pp.18-19.

Nowhere in the Court's Order does the term "dire straights" appear in terms of funding or any other context.  Furthermore, the dicta of the Court's Decision as cited by Ulico, recounted evidence in relation to an issue between the Trustees and the Plaintiff in the underlying action, and cannot be relied upon to create an issue of fact in the third party action, regarding the issue of insurance coverage. As discussed earlier, the Trustees could not be aware that the circumstances referred to in earlier communications from various parties would result in a claim made against the Trustees.    Ulico further argues that had the proper representations been disclosed on the application to Ulico, that "Ulico would not have issued the policy".  Ulico then states, "a misrepresentation is material where it would have caused Ulico to either refuse to issue the policy or raise the policy premium had it known the truth."   This bald, conclusory allegation, based upon mere speculation, as set forth in Ulico's  brief cannot create an issue of fact, nor be asserted to support Ulico's claim of misrepresentation.  Ulico's allegation is not supported by any evidence in this action, nor has said issue  been explored in any discovery to date.

As a result of the foregoing, the Eighth Affirmative Defense of Ulico should be dismissed as there is no issue of fact with respect to any material misrepresentations by the Trustees.

### C.   No Issue Of Material Fact Exists To Preclude Dismissal Of Ulico's Ninth Affirmative Defense Regarding The "Insured vs. Insured" Exclusion.

In its Responding Memorandum, Ulico agrees that no material facts are in dispute regarding this affirmative defense.  As discussed above, in Point I, this Court should grant the Trustees Motion for Summary Judgment on the issue of the "Insured v. Insured" exclusion.

### D.   Ulico's Tenth Affirmative Defense Should Be Dismissed To The Extent That It Seeks Dismissal Of Claims That Do Not Relate To The Issue Of Punitive Damages.

Ulico is correct in its assertion that Plaintiffs seek punitive damages. *See* Second Amended Complaint, ¶ V.  To the extent that punitive damages are awarded, the Trustees agree that no liability on the part of Ulico exists.  However, Ulico's Tenth Affirmative Defense should be dismissed to the extent that it seeks dismissal of claims and/or causes of action in the Third-Party Complaint that do not relate to the issue of punitive damages.   Ulico admits that the Trustees are correct in their assertion that the "inclusion of punitive damages in the claim does not defeat coverage of the matter as a whole." *See* Ulico M.O.L., pp.19-20.

### E.   No Issue Of Material Fact Exists To Preclude Dismissal Of Ulico's Eleventh And Fourteenth Affirmative Defenses Regarding Policy Exclusions Relating To Intentional Harm Of Violation Of Statutes.

Ulico's Eleventh Affirmative Defense asserts that a policy exclusion exists due to intentional harm by the Trustees.  Ulico also asserts that an exclusion exists due to the willful or reckless violation of any statute by the Trustees, as set forth in its Fourteenth Affirmative Defense.

As indicated in <u>Defendants' M.O.L.</u>, there exists no claim of intentional harm by the Plaintiff's against the Trustees.  *See* <u>Defendants' M.O.L.</u>, pp.29, 32.  Other than bald conclusory allegations of misfeasance and malfeasance on the part of the Trustees by the Plaintiffs, there is no claim of any intentional harm by the Plaintiffs against the Trustees. *See* <u>Ulico M.O.L.</u>, pp.20-21. Furthermore, Ulico cannot deny coverage under its policy, and refuse to pay claims expenses on the basis that an issue in the underlying action has not yet been determined.  Such a position by Ulico would undermine the very purpose of an insurer's duty to pay claims expenses.

With respect to the Fourteenth Affirmative Defense in which Ulico asserts its exclusion for willful or reckless violation of any statute, there is no allegation of a willful or reckless violation of the statute contained in Plaintiff's Complaint.  Ulico attempts to argue that the Court has already concluded that, in its February 28, 2003 Order and Decision, that the Plaintiffs already willfully violated ERISA by their "failure to collect delinquencies, which constituted an extension of credit between the Plan and the employers" in violation of ERISA.  *See* <u>Ulico M.O.L.</u>, pp.20-21.  Ulico's argument is clearly misleading in that the Court was merely restating the claims set forth in Plaintiffs Complaint.  Nowhere in the Court's Order, cited by Ulico, is the Court suggesting a violation of ERISA by the Trustees.

While Ulico attempts to create an issue of fact in its Memorandum of Law, in fact no material issue exists with respect to the allegation of a willful or reckless violation of the statute, and Ulico's Fourteenth Affirmative Defense should be dismissed.

### F.    No Issue of Material Fact Exists to Preclude Dismissal of Ulico's Thirteenth Affirmative Defense Regarding Payment of Claims Expenses.

Ulico's argument as it relates to its obligation to provide attorneys fees, either retroactively or in advance, are discussed in this memorandum in connection with the issue of

Ulico's duty to pay claims expenses as they are incurred. *See* <u>Point II</u>, *supra*. For the reasons discussed therein, Ulico's Thirteenth Affirmative Defense should be dismissed.

### G. No Issue of Material Fact Exists to Preclude Dismissal of Ulico's Nineteenth Affirmative Defense Regarding Material Misrepresentations of Fact.

For the reasons described above in Point III(B)(2) specifically regarding the nonexistence of material facts in dispute regarding Trustees misrepresentations, this Court should grant Summary Judgment to the Trustees and dismiss Ulico's Nineteenth Affirmative Defense.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that this Court deny Ulico's motion for summary judgment and grant Defendants Terrence L. Bodewes, Thomas Herr, James Biddle, Sr., and George Ferraro's motion for summary judgment, deny Ulico's summary judgment motion, and order Ulico to begin providing Defendants with coverage under the Policy, including its immediate and on-going duty to pay Defendants' claims expenses as they are incurred.

**BOYLAN, BROWN, CODE,**
**VIGDOR & WILSON, LLP**


By:    s/Mark A. Costello
Mark A. Costello, Esq., of Counsel
***Attorneys for Defendants and***
***Third-Party Plaintiff Terrence L. Bodewes***
2400 Chase Square
Rochester, New York  14604
(585) 232-5300


**DAMON & MOREY LLP**


By:    s/R. Scott DeLuca
R. Scott DeLuca, Esq., of Counsel
***Attorneys for Defendants and***
***Third-Party Plaintiffs James Biddle, Sr.***
***and George Ferraro***
1000 Cathedral Place
298 Main Street
Buffalo, New York 14202-4096
(716) 856-5500


-#806986-

**COHEN & LOMBARDO, P.C.**


By:    s/Daniel J. Sperrazza
Daniel J. Sperrazza, Esq., of Counsel
***Attorneys for Defendants and***
***Third-Party Plaintiff Thomas Herr***
343 Elmwood Avenue; P.O. Box 5204
Buffalo, New York  14213-5204
(716) 881-3010

<u>**CERTIFICATE OF SERVICE**</u>

I, R. Scott DeLuca, Esq., hereby certify and affirm that on the 30th day of April, 2004, I electronically filed the foregoing Reply Memorandum of Law on Behalf of Defendants/Third-Party Plaintiffs Terrence L. Bodewes, Thomas Herr, James Biddle, Sr., and George Ferraro in Support of Defendants' Cross-Motion for Summary Judgment, with the Clerk of the United States District Court for the Western District of New York using its CM/ECF system, which would then electronically notify the following CM/ECF participants of this filing:

Mark A. Costello, Esq.                                      Anthony J. Piazza, Esq.

And, I further certify and affirm that I have mailed the foregoing Reply Memorandum of Law, via post-paid first class mail, to the following non-CM/ECF participants:

<table>
<tr><td>**LEVY RATNER P.C.**</td><td>**COHEN & LOMBARDO, P.C.**</td></tr>
<tr><td>Richard A. Levy, Esq.</td><td>Daniel J. Sperrazza, Esq.</td></tr>
<tr><td>Owen Rumelt, Esq.</td><td>343 Elmwood Avenue</td></tr>
<tr><td>80 Eighth Avenue</td><td>P.O. Box 5204</td></tr>
<tr><td>New York, New York 10011-5126</td><td>Buffalo, New York 14213-5204</td></tr>
<tr><td></td><td></td></tr>
<tr><td>Michael Rickard, II, Esq.</td><td>Lawrence C. Brown, Esq.</td></tr>
<tr><td>24A Old Lyme Road, Suite 4</td><td>360 Dingens Street</td></tr>
<tr><td>Williamsville, NY 14221</td><td>Buffalo, NY 14206</td></tr>
</table>

**DAMON & MOREY LLP**

_____s/R. Scott DeLuca_____
R. Scott DeLuca, Esq.
*Attorneys for Defendants and*
*Third-Party Plaintiffs James Biddle, Sr.*
*and George Ferraro*
298 Main Street; 1000 Cathedral Place
Buffalo, New York 14202
Telephone: (716) 856-5500
E-Mail: sdeluca@damonmorey.com;
   apiatkowski@damonmorey.com; and
   svalentino@damonmorey.com

-#806986-